UNITED STATES COURT OF APPEALS
FOR THE FIFTH CIRCUIT

_____

No. 94-60375
_____

DAROLD L. RUTLAND,

                                        Plaintiff-Appellant,

VERSUS

MIKE MOORE,
Attorney General of the
State of Mississippi, ET AL.,

                                        Defendants-Appellees.

_____

Appeals from the United States District Court
for the Southern District of Mississippi
_____

(May 25, 1995)

Before POLITZ, Chief Judge, REAVLEY and BARKSDALE, Circuit Judges.

RHESA HAWKINS BARKSDALE, Circuit Judge:

    At issue is whether, under the Age Discrimination in Employment Act of 1967, 29 U.S.C. § 621 *et seq*. (ADEA), Darold L. Rutland's putative employment as a special assistant attorney general for the Attorney General of the State of Mississippi fell under one of the exemptions to the ADEA's definition of "employee", *id.* § 630(f), so that his termination could not be violative of the ADEA. Pursuant to the § 630(f) exemption for immediate legal advisers, we **AFFIRM**.

                                    I.

    For the vast majority of his pre-termination legal career, Rutland was an attorney for various agencies of the State of Mississippi. In 1982, he began working for what was subsequently

named the Department of Human Services (DHS), eventually being promoted to Deputy General Counsel.

On August 10, 1989, the office of the Attorney General, pursuant to an inter-agency contract with DHS (effective July 1, 1989), became responsible for providing the department's legal services needs. To meet certain of those needs, the Attorney General created a Human Services Section within his office, to be staffed by seven special assistant attorneys general, with the section under Deputy Attorney General Robert L. Gibbs.

One of Gibbs' first tasks was to recommend to the Attorney General the seven attorneys for the new section, including for the position of section head. For that position, Gibbs recommended, and the Attorney General approved, an attorney already in the Attorney General's office. For the remaining six slots, Gibbs recommended, and the Attorney General approved, six of the seven attorneys who had served previously in the DHS legal department; Rutland was the only attorney not recommended. At the end of August 1989, Rutland's employment with the Attorney General's office was terminated; he was 56 years old.

Claiming that his termination was the result of age discrimination, Rutland brought this action under the ADEA against, among others, Mike Moore, in his official capacity as Attorney General of the State of Mississippi. Rutland asserts that of the six DHS attorneys appointed to serve in the new Human Services Section, only one was over 40 years of age, and, that the employee who assumed his caseload was 38 years old. After extensive

discovery, the district court, *inter alia*, granted summary judgment to the Attorney General.[1]

## II.

It goes without saying that we freely review a summary judgment, and that it is appropriate only if the record discloses "that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law". FED. R. CIV. P. 56(c). The moving party has the initial burden of demonstrating the absence of a material fact issue. *E.g.*, **Topalian v. Ehrman**, 954 F.2d 1125, 1131 (5th Cir.), *cert. denied*, ___ U.S. ___, 113 S. Ct. 82 (1992). "If the movant does, however, meet this burden, the nonmovant must go beyond the pleadings and designate specific facts showing that there is a genuine issue for trial." **Little v. Liquid Air Corp.**, 37 F.3d 1069, 1075 (5th Cir. 1994) (en banc).

The ADEA makes it unlawful for an employee, who is at least 40 years old, to be discharged because of his age. 29 U.S.C. §§ 623(a), 631(a). But, under the ADEA,

> the term "employee" shall not include [1] any person elected to public office in any State or political subdivision of any State by the qualified voters thereof, or [2] any person chosen by such

---

[1] In addition to the Attorney General, Rutland sued the Office of the Attorney General; the State of Mississippi; Robert Gibbs, Deputy Attorney General; DHS; Anne Sapp, Interim Director of DHS; and, Beatrice Branch, Executive Director of DHS. The individuals were sued only in their official capacity. The district court dismissed Gibbs, Sapp, and Branch, because they were not employers under the ADEA, 29 U.S.C. § 630(b); and DHS, because Rutland failed to state an actionable claim against it. Except as discussed *infra*, *see* note 12, our holding that Rutland is not an employee under the ADEA disposes of all issues as to these defendants.

officer to be on such officer's personal staff, or [3] an appointee on the policymaking level or [4] an immediate adviser with respect to the exercise of the constitutional or legal powers of the office.

*Id.* § 630(f).[2]

When discharged, Rutland was involved in the reorganization and realignment of responsibilities between the office of the Attorney General and DHS; he had not assumed any official duties within that office. Thus, whether Rutland falls within a § 630(f) exemption cannot be determined based upon what his pre-discharge duties and responsibilities were. Instead, we must consider the position he would have occupied in the Attorney General's office -- that of special assistant attorney general.

### A.

The first issue at hand is whether § 321 of the Civil Rights Act of 1991, Pub. L. No. 102-166, 105 Stat. 1071, eliminated any protection afforded the Attorney General under the ADEA. That section provides in part:

> The rights, protections, and remedies provided pursuant to section 1202 ... of this title [(which includes protection from age discrimination)] shall apply with respect to employment of any individual chosen or appointed, by a person elected to public office in any State or political subdivision of any State by the qualified voters thereof --

---

[2] Also pursuant to § 630(f), its exemptions notwithstanding, an individual subject to the civil service laws of a state government, a governmental agency, or a political subdivision is still considered an employee for purposes of the ADEA. 29 U.S.C. § 630(f). In Mississippi, special assistant attorneys general are excluded from the state's civil service system. *See* MISS. CODE ANN. § 25-9-107(c)(xiii).

> (1) to be a member of the elected official's personal staff;
>
> (2) to serve the elected official on the policymaking level; or
>
> (3) to serve the elected official as an immediate advisor with respect to the exercise of the constitutional or legal powers of the office.

2 U.S.C. § 1220(a).[3]  Because the age discrimination claimed by Rutland occurred before the enactment of the Civil Rights Act of 1991, we must determine whether this part of the Act should be applied retrospectively.

In *Landgraf v. USI Film Prods.*, ___ U.S. ___, 114 S. Ct. 1483 (1994), the Court addressed the retrospective application *vel non* of a provision in the Act that provided for, *inter alia*, the recovery of punitive and compensatory damages in cases involving intentional discrimination violative of Title VII.  After reviewing the principles that "a court is to apply the law in effect at the time it renders its decision", *id.* at ___, 114 S. Ct. at 1496 (quoting *Bradley v. School Bd. of City of Richmond*, 416 U.S. 696, 711 (1974)), but that "[r]etroactivity is not favored in the law", *id.* (quoting *Bowen v. Georgetown Univ. Hosp.*, 488 U.S. 204, 208 (1988)), the Court concluded:

---

[3]  2 U.S.C. § 1202 provides, in pertinent part:

> All personnel actions affecting employees of the Senate shall be made free from any discrimination based on --
>
> ....
>
> (2) age, within the meaning of section 633a of Title 29 ....

- 5 -

When a case implicates a federal statute enacted after the events in suit, the court's first task is to determine whether Congress has expressly prescribed the statute's proper reach. If Congress has done so, of course, there is no need to resort to judicial default rules. When, however, the statute contains no such express command, the court must determine whether the new statute would have retroactive effect, *i.e.*, whether it would impair rights a party possessed when he acted, increase a party's liability for past conduct, or impose new duties with respect to transactions already completed. If the statute would operate retroactively, our traditional presumption teaches that it does not govern absent clear congressional intent favoring such a result.

*Id.* at ___, 114 S. Ct. at 1505. (The Court held that the provision would not be applied retrospectively. *Id.* at ___, 114 S. Ct. at 1508.[4])

Rutland has failed to identify any clear expression that § 321 of the Civil Rights Act of 1991 should be applied retrospectively. Assuming both that Rutland is not protected by the ADEA because of one or more of the § 630(f) exemptions, and that § 321 repealed them, we must determine whether such a repeal should be applied retrospectively. Under this scenario, § 321 would impose a new duty upon, and increase the potential liability of, the Attorney General, as well as diminish a right he formerly possessed. Past conduct which was legal at the time it occurred would be made illegal. Additionally, prior to the enactment of § 321, the Attorney General had the statutory right to terminate a certain category of employees without fear of being subjected to a possibly

---

[4]    And, in a companion case, the Supreme Court refused to apply retrospectively another provision of the Act. *Rivers v. Roadway Express, Inc.*, ___ U.S. ___, 114 S. Ct. 1510 (1994).

meritorious discrimination claim. Accordingly, assuming that § 321 repealed the § 630(f) exemptions, it cannot be applied retrospectively to Rutland's discharge.[5]

## B.

Proceeding to whether Rutland was an ADEA "employee", we must first sort through the several § 630(f) exemptions. Only then can we determine whether Rutland falls within one.

## 1.

Courts have failed, at times, to identify specifically which of the four § 630(f) exemptions is applicable, ofttimes applying a generic "personal staff" exemption to any § 630(f) exemption. *See, e.g.,* **EEOC v. Reno**, 758 F.2d 581 (11th Cir. 1985). (As discussed *infra*, the district court in this action utilized the generic "personal staff" exemption.) It is important to recognize, however, that there are four distinct situations under § 630(f) when an individual is not an "employee": (1) when he is an elected, public official; (2) when he is a member of an elected official's personal staff; (3) when he is appointed to a policymaking position by an elected official; and, (4) when he serves as an immediate adviser to an elected official on the exercise of constitutional and legal powers. The plain wording of § 630(f) makes this clear.

---

[5]    Because we hold that § 321 of the Civil Rights Act of 1991 is not to be applied retrospectively, we need not address, *inter alia*, the possible federal intrusion into state functions and the implication of the Tenth Amendment to the United States Constitution. *E.g.,* **EEOC v. Wyoming**, 460 U.S. 226, 237 n.11 (1983) ("[s]ome employment decisions are so clearly connected to the execution of sovereign choices that they must be assimilated into them for purposes of the Tenth Amendment").

*See* **Montgomery v. Brookshire**, 34 F.3d 291, 294 (5th Cir. 1994) (noting separate exemptions under § 630(f)).[6]

As noted, in granting the Attorney General summary judgment, the district court relied on the generic "personal staff" exemption. In so doing, it subsumed, and discussed, the immediate legal adviser exemption. We agree with the district court that Rutland was not protected by the ADEA; but, we base this on the more narrow conclusion that Mississippi special assistant attorneys general serve as immediate legal advisers to the Attorney General -- the fourth § 630(f) exemption.[7]

---

[6]    *See also* Joint Explanatory Statement of Managers at the Conference on H.R. 1746, 92d Cong., 2d Sess. (1972), *reprinted in* 1972 U.S.C.C.A.N. 2137, 2179, 2180 ("[i]t is the intention of the conferees to exempt elected officials and members of their personal staffs, and persons appointed by such elected officials as advisers or to policymaking positions at the highest levels of the departments or agencies of State or local governments, such as cabinet officers, and persons with comparable responsibilities at the local level"); **Nichols v. Hurley**, 921 F.2d 1101, 1108 (10th Cir. 1990) ("a person can be a member of an elected official's personal staff and *not* be either a policymaker or an immediate adviser").

[7]    "This court may affirm a grant of summary judgment on any appropriate ground that was raised to the district court and upon which both parties had the opportunity to introduce evidence." **Conkling v. Turner**, 18 F.3d 1285, 1296 n.9 (5th Cir. 1994). As noted, as part of its generic § 630(f) personal staff holding, the district court included, and addressed, the "legal adviser" exemption. In district court, the Attorney General had likewise presented the generic personal staff exemption, and in so doing, raised the more narrow legal adviser exemption, stating in his motion:

>        The "personal staff" exemption to ADEA coverage
>        exempts persons, like Special Assistant Attorneys
>        General, who are chosen by an elected official to
>        be on that official's personal staff, the
>        official's appointees on the policymaking level,
>        and the official's immediate advisors with respect
>        to the exercise of the constitutional or legal

- 8 -

2.

In applying the immediate legal adviser exemption, we do not apply the six-plus factor test utilized in our circuit for the separate exemption for personal staff. That test is discussed, for example, in **Montgomery**, 34 F.3d at 294-95. Needless to say, whether an individual is on an elected official's "personal staff"

---

> powers of his office, 29 U.S.C. § 630(f). Special Assistant Attorneys General serve at the will and pleasure of the Attorney General, as members of his personal staff, are appointees on the policymaking level, and advise the Attorney General on the exercise of his constitutional and legal powers.

Although this incantation of the statutory language possibly did not identify separate bases for the motion (and, obviously, should be avoided), Rutland, as part of his response to the motion, stated:

> [Rutland] would not serve as the [Attorney General's] immediate advisor with respect to the exercise of constitutional or legal powers of his office, but would be continuing in his role as a functionary representing legal interests of the State agency, the Department of Human Services.
>
> ....
>
> [Rutland] ... raises material issues of fact as to each element of [the Attorney General's] claim of personal advisor exemption ....
>
> ... Further information relevant to the issue of personal advisor exemption remains solely within the knowledge and control of the named Defendants .... In order to obtain information with which to fully respond to [the summary judgment motion,] it will be necessary for [Rutland] to conduct depositions of individuals within the Defendants' staffs.

Rutland obtained additional time to conduct discovery; and, over eight months after filing his response, supplemented it. In sum, he recognized, and had an opportunity to respond to, the "immediate adviser" exemption. Moreover, he agreed at oral argument that it had been raised in district court.

- 9 -

can be much more elusive than whether he is an immediate legal adviser to that official.  It also goes without saying that a legal adviser, in general, occupies a more confidential (or, in the legal sense, privileged) relationship with the official than a member of his personal staff.  And, for this case, we need not fashion new factors for our immediate legal adviser analysis; we need not attempt to decide, for example, how "immediate" is "immediate".[8] The undisputed evidence and applicable state statutes make clear that a Mississippi special assistant attorney general falls easily within the exemption.

The Attorney General is "the chief legal officer and advisor for the state".  MISS. CODE ANN. § 7-5-1.  In addition to his two deputies, *id.* § 7-5-3, he is empowered to appoint and employ assistant attorneys general and special assistant attorneys general, all of whom serve at his pleasure.  *See, e.g.*, *id.* §§ 7-5-5, -7.  The latter two positions have virtually the same duties and responsibilities.[9]  The uncontroverted summary judgment evidence

---

[8]    Our research has failed to disclose any case law or legislative history that delimits the scope of the immediate legal adviser exemption.

[9]    The following deposition testimony by a deputy attorney general illustrates that there is no significant difference between an assistant attorney general and a special assistant attorney general:

> Q:    What is the difference in terms of job description and duties, obligation and autho[ri]ty between the Special Assistant and the Assistant?
>
> A:    ...   In job description duties?   There would be none, no difference.
>
> Q:    Why are some people called Assistant and

shows that the Attorney General expects, and receives, advice from

his special assistant attorneys general.[10]  In sum, this evidence

others called Special Assistant?  Is there any differences in the work they perform?

A:  No, not normally, no.  There definitely would not be.

....

Q:  Why does someone become an Assistant as opposed to just a Special Assistant?

A:  Well, the statutes of the State of Mississippi create only, I believe, and I could be wrong, nine or so Assistant Attorneys General, so there is a limited number of Assistant Attorney[s] General[].  The statutes also authorize the Attorney General to hire additional legal assistance, and those additional legal assistants are known as Special Assistant Attorneys General, all of whom are required by law to be attorneys.

[10]    Attorney General Moore stated in his affidavit:

Each special assistant attorney general is expected to advise me directly with respect to the constitutional and legal powers of the office of the Attorney General on the matters, projects and cases to which they have been assigned.

This expectation was clarified at the earlier referenced deputy attorney general deposition:

Q:   ....

Based on the policies, practices, and procedures in effect at the Attorney General's Office, it is accurate, is it not, that the Attorney General does not talk with every Special Assistant about every case every Special Assistant has?

A:   I would think that is correct.  I don't think he has or does talk to every lawyer in his office about each and every individual case.  However, the point is that under the Constitution of this state and under the state statutes, the Attorney General has certain obligations that he

shows that, as a special assistant attorney general, Rutland would have served as an immediate adviser to the Attorney General with respect to the exercise of the constitutional or legal powers of the office.[11]   *See* **Reno**, 758 F.2d 581 (holding assistant state attorney exempt under § 630(f)).[12]

---

must perform and decisions that he must make.

He expects each of us employees to advise him on, one, what the law requires him to do; and secondly, what we think he should do; and thirdly, what his obligations and duties are in a lot of these cases.

So, I don't find anything, you know, unusual with that particular statement.

[11]   The EEOC declined to proceed on Rutland's discrimination charge on the basis that it lacked jurisdiction.  Apparently, it recognized, also, that Rutland was not an employee under the ADEA.

[12]   Relying on **Tranello v. Frey**, 962 F.2d 244 (2d Cir.), *cert. denied*, ___ U.S. ___, 113 S. Ct. 813 (1992).  Rutland contends that, notwithstanding the fact that he may perform one of the functions exempted under § 630(f), the exemptions are inapplicable because, contrary to that section, he was not appointed by the elected official.  In **Tranello**, the Second Circuit held that a deputy county attorney did not fall within the § 630(f) exemptions because he was appointed by another appointed official, not an elected official.  **Id.** at 249.  In Mississippi, however, the authority to appoint special assistant attorneys general is vested statutorily in the Attorney General. MISS. CODE ANN. § 7-5-5.  As discussed, Attorney General Moore approved the recommendations on whether to retain the DHS attorneys.

Finally, Rutland raises, for the first time, the issue that he is a third party beneficiary of the contract between the Office of the Attorney General and DHS.  As is well established, and with very narrow exception, we do not consider issues raised for the first time on appeal; this issue is not such an exception.  *See* **Highlands Ins. Co. v. National Union Fire Ins. Co. of Pittsburgh**, 27 F.3d 1027, 1032 (5th Cir. 1994) (in civil context, "reversal for plain error is `not run-of-the-mill remedy' and will occur `only in exceptional circumstances to avoid a miscarriage of justice'" (quoting **Peveto v. Sears, Roebuck & Co.**, 807 F.2d 486, 489 (5th Cir. 1987))), *cert. denied*, ___ U.S. ___, 115 S. Ct. 903 (1995).

III.

For the foregoing reasons, the judgment is

**AFFIRMED**.