United States Court of Appeals,

Fifth Circuit.

No. 94-50599.

E. Dempsey GUNACA, Plaintiff-Appellant,

v.

The STATE OF TEXAS, office of the District Attorney—El Paso
County, et al., Defendants,

El Paso County, Alicia R. Chacon, County Judge, and Jaime
Esparza, District Attorney, in his official and individual
capacity, Defendants-Appellees.

Oct. 3, 1995.

Appeal from the United States District Court for the Western
District of Texas.

Before REAVLEY and EMILIO M. GARZA, Circuit Judges, and PRADO,
District Judge.[*]

EMILIO M. GARZA, Circuit Judge:

Dempsey Gunaca sued the State of Texas, El Paso County, El
Paso County Judge Alicia Chacon, in her official capacity, and El
Paso County District Attorney Jaime Esparza, in his official and
individual capacity, over the loss of his job as an investigator at
the El Paso County District Attorney's Office. Gunaca alleged age
discrimination under the Age Discrimination in Employment Act of
1967, 29 U.S.C. § 621 (1988), and First Amendment violations under
42 U.S.C. § 1983 (1988). The district court granted Esparza,
Chacon, and El Paso County's motion for summary judgment, and
dismissed Gunaca's complaint. Gunaca appeals the dismissal, and we
affirm.

---

[*]District Judge of the Western District of Texas, sitting by
designation.

1

Dempsey Gunaca was employed as an investigator by the former El Paso County District Attorney, Steve Simmons. When Simmons ran for re-election in 1992, he was defeated in the democratic primary by Jaime Esparza. Esparza, who ran unopposed in the general election, chose not to re-appoint Gunaca to his former position. Gunaca filed suit against Esparza, claiming that Esparza's refusal to re-appoint him was motivated by age discrimination in violation of the ADEA, and by political animus in violation of the First Amendment. Gunaca also named as defendants the State of Texas, El Paso County,[1] and El Paso County Judge Alicia Chacon.[2] The district court dismissed the State of Texas early in the proceedings, and later heard motions for summary judgment from the remaining defendants. The court granted summary judgment in favor of El Paso County and Chacon on the grounds that neither was a proper party to the suit. The court also granted summary judgment in favor of Esparza, holding that investigators in the El Paso County District Attorney's Office are not "employees" for the purposes of the ADEA, *see* 29 U.S.C. § 630(f) (1988) (excluding members of "personal staff" of elected county officials from ADEA's definition of "employee"), and that Gunaca failed to provide summary judgment evidence in support of his claim that Esparza's refusal to

---

[1]In his complaint, Gunaca alleged that he "was employed by the Defendant El Paso County."

[2]In his complaint, Gunaca alleged that "Alicia C. Chacon is County Judge of El Paso County, and is charged with the overall supervision of personnel matters, and maintains and administers all County employee payroll and retirement records."

re-appoint him was motivated by political animus.  Gunaca appeals the district court's grant of summary judgment in favor of Esparza, El Paso County, and Chacon.

## II

We review the district court's grant of summary judgment de novo.  *Montgomery v. Brookshire,* 34 F.3d 291, 294 (5th Cir.1994). Summary judgment is proper under Rule 56 of the Federal Rules of Civil Procedure when all the evidence viewed in the light most favorable to the non-movant shows that "there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law."  Fed.R.Civ.P. 56(c).  Rule 56 "mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial."  *Celotex Corp. v. Catrett,* 477 U.S. 317, 322, 106 S.Ct. 2548, 2552, 91 L.Ed.2d 265 (1986);  *accord Little v. Liquid Air Corp.,* 37 F.3d 1069, 1075 (5th Cir.1994) (en banc).  The movant bears the initial burden of demonstrating the absence of a genuine issue of material fact, but need not negate the elements of the nonmovant's case.  *Celotex,* 477 U.S. at 323, 106 S.Ct. at 2553;  *accord Little,* 37 F.3d at 1075.  "If the moving party fails to meet this initial burden, the motion must be denied, regardless of the nonmovant's response."  *Little,* 37 F.3d at 1075. "Once the moving party has supported its contention that there is no genuine issue of material fact and that it is entitled to

3

judgment as a matter of law, the burden is on the nonmoving party "to go beyond the pleadings and by her own affidavits, or by the depositions, answers to interrogatories, and admissions on file, designate "specific facts" showing that there is a genuine issue for trial.' " *Krim v. BancTexas Group, Inc.*, 989 F.2d 1435, 1445 (5th Cir.1993) (quoting *Celotex,* 477 U.S. at 324, 106 S.Ct. at 2553.)

A

Gunaca argues that the district court erroneously granted Esparza's motion for summary judgment on Gunaca's ADEA claim on the grounds that Gunaca is not an "employee" under § 630(f) of the ADEA. Under the ADEA, it is unlawful to discharge an employee because of the employee's age. 29 U.S.C. § 623(a)(1); *accord Montgomery,* 34 F.3d at 294. However, § 630(f) of the ADEA excludes from its definition of "employee":

> [A]ny person elected to public office in any State or political subdivision of any State by the qualified voters thereof, or any person chosen by such officer to be on such officer's personal staff, or an appointee on the policymaking level or an immediate adviser with respect to the exercise of the constitutional or legal powers of the office.

29 U.S.C. § 630(f).[3]  The district court held that Gunaca "was a

---

[3]Not long before the events at issue in this suit occurred, Congress passed the Civil Rights Act of 1991, Pub.L. No. 102-166, 105 Stat. 1071 (1991). Section 321 of the Act provided in relevant part that:

> The rights, protections, and remedies provided pursuant to section 302 and 307(h) of this title shall apply with respect to employment of any individual chosen or appointed, by a person elected to public office in any State or political subdivision of any State by the qualified voters thereof—

4

member of the personal staff of the district attorney and is therefore not an "employee' covered by the Act."  Gunaca contends that Esparza failed to show that there are no genuine issues of fact as to whether Gunaca fell into the personal staff exception.

---

(1) to be a member of the elected official's personal staff....  § 321(a) (codified at 2 U.S.C. § 1220(a) and amended by the Congressional Accountability Act of 1995, Pub.L. No. 104-1);  *see generally, Rutland v. Moore,* 54 F.3d 226 (5th Cir.1995) (discussing § 321).  The rights and protections provided by § 302 included freedom from discrimination based on age "within the meaning of section 633a of [the ADEA];"  and the remedies provided by § 307(h) included, "[i]n the case of a determination that a violation based on age has occurred," "such remedies as would be appropriate if awarded under section 633a(c) of [the ADEA]."

While no party to the present suit has raised the issue, it is possible that § 321 offered Gunaca a way to circumvent the exemptions found in § 630(f) of the ADEA and a vehicle for his ADEA claim.  *Cf. Rutland,* 54 F.3d at 230 (assuming without holding that § 321 repealed the exemptions in § 630(f)).  We need not resolve what rights Gunaca might have had under § 321 because the record in the present case shows that Gunaca's suit against Esparza was not brought in compliance with the administrative and procedural requirements set forth in that statute.  *See, e.g.,* § 321(b) (codified at 2 U.S.C. § 1220(b) and amended by the Congressional Accountability Act of 1995, Pub.L. No. 104-1) (providing that complaints brought under § 321 must be filed with EEOC, and that the EEOC will issue a final order on the claim);  § 321(c) (codified at 2 U.S.C. § 1220(c) and amended by the Congressional Accountability Act of 1995, Pub.L. No. 104-1) (requiring that "[a]ny party aggrieved by a final order under subsection (b) may obtain a review of such order under chapter 158 of title 28, United States Code.  For the purpose of this review, the Equal Employment Opportunity Commission shall be an "agency' as that term is used in chapter 158 of title 28, United States Code.");  28 U.S.C. § 2344 (1988) ("On entry of a final order reviewable under [chapter 158 of Title 28], the agency shall promptly give notice thereof by service or publication in accordance with its rules.  Any party aggrieved by the final order may, within 60 days after its entry, file a petition to review the order *in the court of appeals* wherein venue lies.  The action *shall be against the United States.*" (emphasis added)).

5

"Because the personal staff exception in the ADEA is identical to the personal staff exemption found in Title VII, 42 U.S.C. § 2000e(f), courts construe the two exceptions consistently." *Montgomery,* 34 F.3d at 294. In *Teneyuca v. Bexar County,* 767 F.2d 148 (5th Cir.1985), we identified six factors that courts have found significant in determining whether a Title VII plaintiff fell under that statute's personal staff exemption:

> (1) Whether the elected official has plenary powers of appointment and removal, (2) whether the person in the position at issue is personally accountable to only that elected official, (3) whether the person in the position at issue represents the elected official in the eyes of the public, (4) whether the elected official exercises a considerable amount of control over the position, (5) the level of the position within the organization's chain of command, and (6) the actual intimacy of the working relationship between the elected official and the person filling the position.

*Id.* at 151; *see also Clark v. Tarrant County,* 798 F.2d 736, 742 (5th Cir.1986) (applying *Teneyuca* factors in Title VII case). We have considered those same factors in our application of the ADEA's personal staff exception. *See Montgomery,* 34 F.3d at 294-95 (applying *Teneyuca* in ADEA case).

The list is not exhaustive, *Teneyuca,* 767 F.2d at 151-52; *Montgomery,* 34 F.3d at 295, but it does guide us in looking to the " "nature and circumstances of the employment relationship between the complaining individual and the elected official to determine if the exception applies,' " *Teneyuca,* 767 F.2d at 152 (quoting *Owens v. Rush,* 654 F.2d 1370, 1375 (10th Cir.1981)); *accord Montgomery,* 34 F.3d at 295. Our consideration of these factors is tempered by the legislative history of the exception, which indicates that it

6

is to be narrowly construed.  *Teneyuca,* 767 F.2d at 152;  *Clark,* 798 F.2d at 742;  *Galvan v. Bexar County,* 785 F.2d 1298, 1303 n. 8 (5th Cir.1986).[4]  Finally, we have emphasized that " "the highly factual nature of the inquiry necessary to the determination of the "personal staff" exception does not lend itself well to disposition by summary judgment.' "  *Montgomery,* 34 F.3d at 295 (quoting *Teneyuca,* 767 F.2d at 152).

Gunaca has conceded that under chapter 41 of the Texas Government Code, the district attorney has plenary power to appoint and remove investigators, *see* Tex.Gov't Code Ann. § 41.102 (West 1988) ("A prosecuting attorney may employ the assistant prosecuting attorneys, investigators, secretaries, and other office personnel that in his judgment are required for the proper and efficient operation and administration of the office.");  Tex.Gov't Code Ann. § 41.105 ("All personnel of a prosecuting attorney's office are subject to removal at the will of the prosecuting attorney."), and that investigators are personally accountable only to the district attorney, *see* Tex.Gov't Code Ann. § 41.109(b) ("An investigator is under the exclusive authority and direction of the prosecuting

---

[4]" "It [was] the conferees intent that this exemption [should] be construed narrowly.' "  *Teneyuca,* 767 F.2d at 152, (quoting 1972 U.S.C.C.A.N. 2137, 2180).  "Furthermore, Senator Ervin, the sponsor of the original Senate amendment, agreed that the purpose of the exception was to "exempt from coverage those who are chosen by ... the elected official ..., and who are in a close personal relationship and an immediate relationship with him.  Those who are his first line advisers.' "  *Id.* (quoting 118 Cong.Rec. 4492-93 (1972)).  " "Congress intended for the personal staff exception to apply only to those individuals who are in highly intimate and sensitive positions of responsibility on the staff of the elected official.' "  *Montgomery,* 34 F.3d at 295 (quoting *Teneyuca,* 767 F.2d at 152).

attorney...."). Thus, Gunaca has conceded the first two *Teneyuca* factors.

Gunaca contends, however, that investigators do not represent the district attorney in the eyes of the public because only those employees of the district attorney who are licensed to practice law, such as the assistant district attorneys, can represent the district attorney in the eyes of the public. In applying the third *Teneyuca* factor in *Clark v. Tarrant County,* 798 F.2d 736 (5th Cir.1986), we deemed relevant the fact that a probation officer did not represent her appointing judge to the general public in the same way that "[an] assistant district attorney represents the district attorney in legal proceedings and in the eyes of the public." *Id.* at 743. However, we discussed the scope of the factor at greater length in *Montgomery v. Brookshire,* 34 F.3d 291 (5th Cir.1994), which concerned the application of the personal staff exemption to sheriffs' deputies. We held in *Montgomery* that "as uniformed officials, all deputies regardless of position or rank represent the sheriff in the eyes of the public to some extent because the public is often generally unaware of the hierarchy within the sheriff's department." *Id.* at 296. While we noted that "[o]ther considerations may arguably also be pertinent [in applying the third *Teneyuca* factor] in the context of lawyers in a law office representing an entity such as a city or county," *id.* at 297 n. 6, the consideration emphasized in *Montgomery* is equally important in the present case. As Esparza stated in his motion for summary judgment, investigators are statutorily authorized to make

8

arrests and to serve warrants, capiases, and subpoenas issued in criminal cases. Tex.Gov't Code Ann. § 41.109(a). Investigators are also authorized to execute search warrants. *Glaze v. State,* 165 Tex.Crim. 626, 310 S.W.2d 88 (1958). In performing these functions, which necessarily involves interaction with the public, investigators are no less representatives of the district attorney for want of a law license than the deputies in *Montgomery* were representatives of the sheriff despite their position in the office hierarchy.

Gunaca also contends that the district attorney does not exercise a considerable amount of control over investigators. Esparza alleged in his motion for summary judgment, and the district court held, that the language of section 41.109(b) of the Texas Government Code, providing that the district attorney has "exclusive authority and direction" over investigators, established this degree of control. However, in our application of the fourth *Teneyuca* factor in *Montgomery,* which we decided after the district court issued its order granting summary judgment, we emphasized instead the degree of control an employer actually exerts over the employee's day-to-day activities. *See Montgomery,* 34 F.3d at 296 (stressing in its application of fourth *Teneyuca* factor that defendant "barely exhibited any control over Montgomery's day-to-day activities"). Because the relevant provisions of section 41.109(b) are duly accounted for in our consideration of the second *Teneyuca* factor, we follow the approach taken by the court in *Montgomery.* Summary judgment evidence shows that Gunaca

spoke to the former district attorney "practically every day." Gunaca stated in a deposition: "I would discuss certain activities and my investigation activities with him, to make sure that I wasn't overstepping something or doing something wrong or—we had quite a few conversations like that." This evidence clearly establishes that the former district attorney had considerable day-to-day control over Gunaca's activities.

Gunaca argues that the working relationship between the district attorney and the investigators is not intimate. In our application of the sixth *Teneyuca* factor in *Montgomery,* we considered the frequency with which Montgomery and his employer discussed business and consulted each other regarding their work. *Id.* at 296. In his motion for summary judgment, Esparza argued that a district attorney must maintain an intimate working relationship with investigators because "[i]n determining whether or not to initiate a criminal prosecution, a district attorney must confer, consult and rely upon the investigator assigned to gather evidence in the case," making the investigator "privy to the confidential communications and deliberations of the elected official." He supported his claim with affidavits from himself and an assistant that included essentially the same statements. Gunaca offered as summary judgment evidence his own affidavit, in which he stated that his working relationship with the former district attorney involved "reporting, reviewing, and seeking approval of investigative activities" but that he was "never included in organizational meetings, planning sessions, policy-making

10

decisions, or case strategy meetings." That Gunaca was not included in such meetings and decision-making does not detract from the fact that he regularly discussed business with the former district attorney, consulted the district attorney regarding work, and was consulted by the district attorney regarding work.

The fifth *Teneyuca* factor is the level of the position within the organization's chain of command. As we explained in *Montgomery:* "Factor five concerns [plaintiff's] rank within the organization's command structure. The "personal staff' exception becomes less applicable the lower the particular employee's position because the exception was primarily intended to exempt the elected official's immediate subordinates or those "who are his first line advisors.' " *Montgomery,* 34 F.3d at 296 (holding that employee was not a member of employer's "personal staff" where four levels of supervisors separated employee from employer). Unrefuted summary judgment evidence established that in the organizational structure of the district attorney's office, three levels of supervisors separate investigators from the district attorney. The district court acknowledged that "[t]he investigator's position within the district attorney's chain of command is not at the top," but emphasized that "the district attorney and his assistants place a great deal of trust in their investigators, and rely heavily upon them."

Although the investigators' position in the office's organizational structure provides Gunaca with his strongest argument that investigators are not part of the district attorney's

11

personal staff, the argument does not have much force. Summary judgment evidence established that there are about fifty-five appointed positions in the district attorney's office, half the number of appointed law enforcement officials in the sheriff's office in *Montgomery, see Montgomery,* 34 F.3d at 297 (noting that appointed law enforcement officials numbered 113). In a small office, an employee's placement in the chain of command is less significant to a consideration of the nature and circumstances of the employment relationship between employee and employer. Thus, while the placement of the position of investigator in the office's organizational structure is evidence that Gunaca was not a member of the former district attorney's personal staff, we cannot say that it is very strong evidence that he was not.

Our inquiry into the nature and circumstances of the employment relationship between Gunaca and the former district attorney for the purpose of determining whether Gunaca is exempt from the protection of the ADEA is highly factual. It would not lend itself well to disposition by summary judgment were it not that most of the necessary facts are provided by statute or by Gunaca's testimony and summary judgment evidence. Our consideration of the *Teneyuca* factors supports the district court's judgment, and that judgment does not rely on the resolution of any genuine issues of fact. Therefore, we conclude that the district court properly granted Esparza's motion for summary judgment on Gunaca's ADEA claim on the grounds that Gunaca is excluded from the coverage of the ADEA.

12

Gunaca argues next that the district court erroneously granted Esparza's motion for summary judgment on the question of whether Esparza violated the First Amendment by refusing to re-appoint Gunaca in retaliation for Gunaca's political support of the former district attorney.[5] Although Esparza contended in his motion for summary judgment that he is entitled to qualified immunity from liability on Gunaca's First Amendment claim, the district court granted Esparza's motion on the grounds that Gunaca "undeniably engaged in protected political activity, [but] has failed to come forward with credible evidence that such activity was the reason for his non-employment."

---

[5]Gunaca also argues that the district court erroneously granted El Paso County and Judge Alicia Chacon summary judgment on his § 1983 claim on the grounds that neither was a proper party to the suit. The municipal defendants argued in their motion for summary judgment that, under Texas law, the district attorney possesses exclusive authority to hire and fire investigators. "Accordingly," they concluded, "neither Defendant Chacon nor Defendant the County of El Paso can be held legally responsible for Defendant Esparza's decision to refuse to reappoint Plaintiff...." On appeal, Gunaca claims that he "does not dispute the fact that the decision to hire and fire was possessed totally by Esparza," but contends instead, as he did in his response to Esparza's motion for summary judgment, that the municipal officials control investigators' salary and employment benefits. We have previously held that such assertions do not state a claim for municipal liability under § 1983. *See Clark v. Tarrant County,* 798 F.2d 736, 747-48 (5th Cir.1986) (affirming summary judgment dismissal of municipal defendants in § 1983 gender bias in pay and promotions suit because only alleged basis for liability was that municipal defendants, who "did not set salaries nor influence promotions," controlled other aspects of the employment relationship). Because Gunaca provided no summary judgment evidence to support any other theory of municipal liability, we conclude that the district court properly granted the municipal defendants summary judgment on Gunaca's § 1983 claim.

Government officials performing discretionary functions are entitled to qualified immunity from suit unless their conduct violated clearly established statutory or constitutional rights of which a reasonable person would have known. *Gibson v. Rich,* 44 F.3d 274, 277 (5th Cir.1995). A claim of immunity must be resolved at the earliest possible stage of litigation because it entails an entitlement to immunity from suit and not merely a defense to liability. *Hunter v. Bryant,* 502 U.S. 224, 226, 112 S.Ct. 534, 536, 116 L.Ed.2d 589 (1991); *accord Gibson,* 44 F.3d at 277. In reviewing Esparza's assertion of qualified immunity, we must first determine whether Gunaca has alleged a violation of a constitutional right. *Siegert v. Gilley,* 500 U.S. 226, 232, 111 S.Ct. 1789, 1793, 114 L.Ed.2d 277 (1991); *Vojvodich v. Lopez,* 48 F.3d 879, 886 (5th Cir.1995). In *Elrod v. Burns,* 427 U.S. 347, 357, 96 S.Ct. 2673, 2681, 49 L.Ed.2d 547 (1976), the Supreme Court held that because "political belief and association constitute the core of those activities protected by the First Amendment," *id.* at 356, 96 S.Ct. at 2681, the practice of patronage dismissals "clearly infringes First Amendment interests," *id.* at 360, 96 S.Ct. at 2683. Gunaca alleged in his complaint that "his discharge and failure to be rehired by Defendant Jaime Esparza ... [was] motivated by reasons of plaintiff's political preferences, and in retaliation for said political preference." Thus, Gunaca has at least alleged a violation of his constitutional rights.

Our second step is to determine whether the constitutional right that Esparza allegedly violated was clearly established at

14

the time of the alleged violation. In *Anderson v. Creighton,* 483 U.S. 635, 107 S.Ct. 3034, 97 L.Ed.2d 523 (1987), the Supreme Court emphasized that "[t]he operation of this standard ... depends substantially upon the level of generality at which the relevant "legal rule' is to be identified." *Id.* at 639, 107 S.Ct. at 3038-39. The Court discussed the dangers of defining the relevant legal right too generally, and held that "the right the official is alleged to have violated must have been "clearly established' in a more particularized, and hence more relevant sense: The contours of the right must be sufficiently clear that a reasonable official would understand that what he is doing violates that right." *Id.* at 640, 107 S.Ct. at 3039; *accord Matherne v. Wilson,* 851 F.2d at 752, 756 (5th Cir.1988). Thus, in *Anderson,* which involved a warrantless search of a residence, the Court held that "It simply does not follow immediately from the conclusion that it was firmly established that warrantless searches not supported by probable cause and exigent circumstances violate the Fourth Amendment that [the defendant's] search was objectively legally unreasonable," and held that the lower court should have considered whether it was "clearly established that the *circumstances* with which [the defendant] was confronted did not constitute probable cause and exigent circumstances." *Anderson,* 483 U.S. at 640-41, 107 S.Ct. at 3039 (emphasis added).

In *Noyola v. Texas Department of Human Resources,* 846 F.2d 1021 (5th Cir.1988), we considered the effect of *Anderson* on "the qualified immunity of public officials whose actions are alleged to

15

have violated an employee's first amendment rights." *Noyola,* 846 F.2d at 1025. Because our consideration of such First Amendment claims involves a case-specific balancing of the employee's First Amendment rights and the government's interest in maintaining discipline and efficiency in the work place, *id.,* we held that "[t]here will rarely be a basis for *a priori* judgment that the termination or discipline of a public employee violated "clearly established' constitutional rights." *Id.* In *Noyola,* reasoning that "[n]o Fifth Circuit case [at the time of the alleged violation] had found a first amendment violation on facts like these," *id.* at 1026, we held that the defendant official was entitled to qualified immunity because " "reasonable government officials, knowing only that they must not infringe on [employee free speech rights], would not necessarily know just what conduct was prohibited.' " *Id.* at 1025 (quoting *Hodorowski v. Ray,* 844 F.2d 1210, 1217 (5th Cir.1988)).

Esparza took office in January of 1993. By that time, both the Supreme Court and the Fifth Circuit had recognized a class of public employees from whom political allegiance may be demanded: public employees whose First Amendment interests are outweighed by a governmental interest in the employees' political loyalty. *See, e.g., Branti v. Finkel,* 445 U.S. 507, 518, 100 S.Ct. 1287, 1295, 63 L.Ed.2d 574 (1980) (holding that an employee is not protected from political patronage dismissal if "the hiring authority can demonstrate that party affiliation is an appropriate requirement for the effective performance of the public office involved");

16

*Vojvodich,* 48 F.3d at 887 (holding that "by January 1992 at the latest," law clearly established that "a public employer cannot act against an employee because of the employee's affiliation or support of a rival candidate unless the employee's activities in some way adversely affect the government's ability to provide services").[6]

The right that Gunaca asserts in his complaint and summary judgment response was not clearly established at the time Esparza allegedly violated it because neither the Fifth Circuit nor the Supreme Court had addressed the issue of political patronage in the hiring or firing of investigators in district attorneys' offices, and neither had addressed an issue sufficiently analogous that a reasonable official would understand from its resolution that it is a First Amendment violation to dismiss or to not hire an investigator on the grounds that the investigator supported the campaign of the official's opponent. *See Noyola,* 846 F.2d at 1026 (reversing district court's rejection of defendant's claim of qualified immunity in case involving discharge that allegedly violated public employee's First Amendment rights because, at the

---

[6]In *Matherne,* we considered whether a plaintiff's asserted rights under *Elrod* were "clearly established" at the time the plaintiff's employer allegedly violated them. The plaintiff had provided summary judgment evidence that he did not fall into the *Branti* exception, and we, taking the facts in the light most favorable to the party responding to the motion for summary judgment, took that fact as established for the purposes of our inquiry. *Matherne,* 851 F.2d at 757. Gunaca did not address the *Branti* exception in his response to Esparza's motion for summary judgment, nor did he provide summary judgment evidence that would have supported a claim that the position of investigator does not fall under the exception.

time of the alleged violation, no Fifth Circuit case had found a First Amendment violation on similar facts). "This is not to say that an official action is protected by qualified immunity unless the very action in question has previously been held unlawful, but it is to say that in the light of preexisting law the unlawfulness must be apparent." *Anderson,* 483 U.S. at 640, 107 S.Ct. at 3039. Because reasonable public officials could have differed on the lawfulness of Esparza's actions at the time they occurred, Esparza is entitled to qualified immunity. *See Blackwell,* 34 F.3d at 303 (holding that defendant is entitled to qualified immunity if reasonable officials could differ on the lawfulness of defendant's actions).[7] Thus, we affirm on the grounds of qualified immunity the district court's grant of summary judgment on Gunaca's § 1983 claim against Esparza.

## III

For the foregoing reasons, we AFFIRM the district court's grant of summary judgment on Gunaca's ADEA and § 1983 claims.

---

[7]The question " "is not whether the law was settled, viewed abstractly, but whether, measured by an objective standard, a reasonable officer would know that his action [was] illegal.' " *Click v. Copeland,* 970 F.2d 106, 109 (5th Cir.1992) (quoting *Matherne,* 851 F.2d at 756).

18