**Toni DUBISAR–DEWBERRY, Plaintiff,**

v.

**The DISTRICT ATTORNEY'S OFFICE OF the TWELFTH JUDICIAL CIRCUIT OF the STATE OF ALABAMA, Defendant.**

**Civil Action No. 95–D–228–S.**

United States District Court,
M.D. Alabama,
Southern Division.

March 28, 1996.

---

J. Rick Hollingsworth, Enterprise, AL, for Toni Dubisar–Dewberry.

Anita L. Kelly, Kenneth Lamar Thomas, Thomas, Means & Gillis, P.C., Montgomery, AL, for Joel Folmar, Bruce DeVane, The District Attorney's Office of the Twelfth Judicial Circuit of the State of Alabama.

### MEMORANDUM OPINION

DE MENT, District Judge.

Before the court is defendant District Attorney's Office for the Twelfth Judicial Circuit of the State of Alabama's ("Office of the District Attorney") motion filed July 24, 1995, for summary judgment. Plaintiff Toni Dubisar–Dewberry ("Ms. Dubisar–Dewberry") filed a response in opposition on August 8, 1995. The Office of the District Attorney then filed a supplement to his motion for summary judgment on February 27, 1996. After careful consideration of the arguments of counsel, the relevant case law, and the record as a whole, the court finds that the motion for summary judgment of the Office of the District Attorney is due to be granted.

### SUMMARY JUDGMENT STANDARD

On a motion for summary judgment, the court is to construe the evidence and factual inferences arising therefrom in the light most favorable to the nonmoving party. *Adickes v. S.H. Kress & Co.,* 398 U.S. 144, 157, 90 S.Ct. 1598, 1608, 26 L.Ed.2d 142 (1970). Summary judgment can be entered on a claim only if it is shown "that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(c). As the Supreme Court has explained the summary judgment standard:

[T]he plain language of Rule 56(c) mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial. In such a situation, there can be no genuine issue as to any material fact, since a complete failure of proof concerning an essential element of the non-moving party's case necessarily renders all other facts immaterial.

*Celotex Corp. v. Catrett,* 477 U.S. 317, 322–23, 106 S.Ct. 2548, 2552, 91 L.Ed.2d 265 (1986). The trial court's function at this juncture is not "to weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial." *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 249–50, 106 S.Ct. 2505, 2511, 91 L.Ed.2d 202 (1986) (citations omitted). A dispute about a material fact is genuine if the evidence is such that a reasonable jury could return a verdict for the nonmoving party. *Anderson,* 477 U.S. at 248, 106 S.Ct. at 2510; *see also Barfield v. Brierton,* 883 F.2d 923, 933 (11th Cir.1989).

The party seeking summary judgment has the initial burden of informing the court of the basis for the motion and of establishing, based on relevant "portions of 'the pleadings, depositions, answers to interrogatories, and admissions in the file, together with affidavits, if any,' " that there is no genuine issue of material fact and that the moving party is entitled to judgment as a matter of law. *Celotex,* 477 U.S. at 323, 106 S.Ct. at 2552–53. Once this initial demonstration under Rule 56(c) is made, the burden of production, not persuasion, shifts to the nonmoving party. The nonmoving party must "go beyond the pleadings and by [his] own affidavits, or by the 'depositions, answers to interrogatories, and admissions on file, 'designate' specific facts showing that there is a genuine issue for trial.' " *Celotex,* 477 U.S. at 324, 106 S.Ct. at 2553; *see also* Fed.R.Civ.P. 56(e).

In meeting this burden the nonmoving party "must do more than simply show that there is a metaphysical doubt as to

the material facts." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586, 106 S.Ct. 1348, 1356, 89 L.Ed.2d 538 (1986). That party must demonstrate that there is a "genuine issue for trial." Fed.R.Civ.P. 56(c); *Matsushita*, 475 U.S. at 587, 106 S.Ct. at 1356. An action is void of a material issue for trial "[w]here the record taken as a whole could not lead a rational trier of fact to find for the non-moving party." *Matsushita*, 475 U.S. at 587, 106 S.Ct. at 1356; *see also Anderson*, 477 U.S. at 249, 106 S.Ct. at 2510–11.

### STATEMENT OF FACTS

Ms. Dubisar–Dewberry commenced this action on February 17, 1995, seeking redress for alleged discrimination on the basis of a violation of the Pregnancy Discrimination Act, 42 U.S.C. § 2000e(k), in accordance with Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. § 2000e *et seq.* Pl.'s Comp. at ¶ 1. Ms. Dubisar–Dewberry is a white female who was hired as the Twelfth Judicial Circuit Child Support Coordinator for Coffee County, Alabama. She was personally appointed to this position by District Attorney Joel Folmar ("Mr. Folmar") in October, 1990, to serve at his pleasure pursuant to § 12–17–220 of the *Alabama Code.* Al Smith's Aff. at ¶ 3; Pl.'s Resp. to Def.'s Mot. to Dismiss at ¶ 5. She continued as Child Support Coordinator until she was terminated in October, 1993. Pl.'s Resp. to Inter. No. 2. She claims that she was terminated because she was pregnant and unmarried. Pl.'s Comp. at ¶ 1.

The position of Child Support Coordinator requires a combination of specialized legal, clerical and administrative work in the area of child support. Ms. Dubisar–Dewberry was required to handle the day-to-day duties of the child support enforcement program. *See generally* Job Criteria of Child Support Coordinator. In regard to these duties, she answered primarily to the Deputy District Attorney in charge of child support, Bryan Morgan ("Mr. Morgan"). *See* Mr. Morgan's Aff. at 1–2. She was also responsible for developing and recommending new or unified procedures to assist Mr. Folmar in carrying out services with respect to child support. Al Smith's Aff. at ¶ 3.

The nature and requirements of the position of Child Support Coordinator are established via an agreement or contract between the District Attorney and the County and State Department of Human Resources ("DHR"). Because her job was funded primarily through money obtained through DHR, the District Attorney was required to report costs and expenses to the State DHR Office. *See* Pl.'s Exh. B. Furthermore, the position of Child Support Coordinator required daily reporting of time and attendance. *See* Manual For Child Support Enforcement at 11–3.

In August and September, 1993, the Office of the District Attorney began reviewing its contract with the DHR to determine whether it would continue to prosecute child support cases. Aff. of Mr. Smith at ¶ 5. One factor the it considered was that the child support program had cost the office more money than it had been reimbursed by DHR all three years the program had been in operation.[1] As a result of the three-year deficiency, Mr. Folmar decided that the office needed to be reorganized. Mr. Smith's Aff. at ¶ 5.

On September 16, 1993, Mr. Folmar advised Ms. Dubisar–Dewberry at a meeting with her, Mr. Folmar, Chief District Attorney Al Smith, and Chief Investigator and Chief Administrator Bruce DeVane ("Mr. DeVane"), that she was going to be terminated effective October 1, 1993, as part of the reorganization of the child support office. Aff. of Mr. Smith at ¶ 5. Subsequently, all child support personnel were given a memorandum dated September 16, 1993, from the District Attorney wherein he advised the child support staff that a new contract had not been negotiated with DHR, and that if a new contract was not approved, child support services would terminate on September 30, 1993. They were further advised that check revenues had declined and that state appropriations continued to be prorated, and as a

---

1. The deficiency was due to the policy of DHR to give incentive payments to the 12th Circuit for the amount of collections of child support for recipients of Aid to Families with Dependent Children ("AFDC"). Thus, any collections of child support payments involving non-AFDC cases were not rewarded with incentive payments.

result, a reduction in workforce was necessary.

On October 12, 1993, Ms. Dubisar–Dewberry told Becky Ellis, the Assistant Office Manager of the Enterprise office, that she was pregnant. At no time did the plaintiff ever advise Mr. Folmar that she was pregnant. Ms. Dubisar–Dewberry's Dep. at 88–89.

On October 26, 1993, Ms. Dubisar–Dewberry requested and had a meeting with Mr. DeVane, at which time she told him that she was unhappy with being terminated with only one-week notice. Mr. DeVane told Mr. Folmar of this meeting, and Mr. Folmar instructed Mr. DeVane to tell the plaintiff that she could leave immediately and consider herself on annual leave for the remainder of the month. Ms. Dubisar–Dewberry's Dep. at 123. Ms. Dubisar–Dewberry decided to leave. On her way out, she advised another employee that she had destroyed child support computer data. Ms. Dubisar–Dewberry's Dep. at 125–132.

Ms. Dubisar–Dewberry stated in her deposition that neither Mr. Folmar, Mr. Smith, nor Mr. DeVane ever told her that she was terminated because she was pregnant and unmarried. Ms. Dubisar–Dewberry's Dep. at 103–104. Furthermore, the EEOC issued a determination that the investigation of Ms. Dubisar–Dewberry's charge of discrimination did "not disclose evidence that [the Office of the District Attorney] employment decisions were motivated by [Ms. Dubisar–Dewberry's] pregnancy." Def.'s Exh. 4.

The Office of the District Attorney argues that Ms. Dubisar–Dewberry's employment with their office falls within the ambit of the "personal staff" exception to Title VII as set out in 42 U.S.C. § 2000e(f). As such, it contends that Ms. Dubisar–Dewberry is barred from bringing an action pursuant to Title VII. The Office of the District Attorney also maintains that, even if Ms. Dubisar–Dewberry falls within the definition of an employee for purposes of Title VII, the decision to terminate her employment had nothing to do with her pregnancy. Because the court finds the argument of the Office of the District Attorney regarding the personal staff exception to be compelling and dispositive of this action, it is unnecessary to ad-

dress the second argument proffered in support of its motion for summary judgment.

## DISCUSSION

 42 U.S.C. § 2000e(f) provides in pertinent part that:

The term "employee" means an individual employed by an employer, except that the term "employee" shall not include any person elected to public office in any State or political subdivision of any State by the qualified voters thereof, or any person chosen by such officer to be on such officer's personal staff, or an appointee on the policy making level or an immediate advisor with respect to the exercise of the constitutional or legal powers of the office....

42 U.S.C. § 2000e(f). Although Title VII does not define "personal staff," the Eleventh Circuit has held that the determination "is to be ascertained through consideration of the statutory language of the Act, its legislative history, existing federal case law, and the particular circumstances of the case at hand." *E.E.O.C. v. Reno*, 758 F.2d 581, 584 (11th Cir.1985). In this regard, several courts have identified six factors that courts may consider to determine whether a plaintiff falls within the "personal staff" exception to Title VII's definition of employee. *Gunaca v. State of Tex.*, 65 F.3d 467, 470 (5th Cir. 1995); *Montgomery v. Brookshire*, 34 F.3d 291, 295 (5th Cir.1994); *Teneyuca v. Bexar County*, 767 F.2d 148, 151 (5th Cir.1985); *Patrick v. City of Florala*, 793 F.Supp. 301, 305 (M.D.Ala.1992). These factors include: (1) whether the elected official has plenary powers of appointment and removal; (2) whether the person in the position at issue is personally accountable to only that elected official; (3) whether the person in the position at issue represents the elected official in the eyes of the public; (4) whether the elected official exercises a considerable amount of control over the position; (5) the level of the position within the organization's chain of command; and (6) the actual intimacy of the working relationship between the elected official and the person filling the position. *Id.* Based on the legislative history of the exception, it should be narrowly construed. *Gunaca*, 65 F.3d at 471.

The court finds the Fifth Circuit's decision in *Gunaca* persuasive because, like the instant action, it involved an employee appointed by a District Attorney pursuant to a state statute. In *Gunaca*, the plaintiff was employed as an investigator by the former El Paso County District Attorney. The plaintiff was not reappointed to his position as investigator when the former District Attorney was defeated in the Democratic Party primary. The plaintiff contended that he was not reappointed by the newly elected District Attorney partly because of age discrimination. The trial court granted the new District Attorney's motion for summary judgment because the court found that the plaintiff was not an "employee" for purposes of the ADEA.[2] *Gunaca*, 65 F.3d at 469. The plaintiff then appealed to the Fifth Circuit Court of Appeals contending that the factual nature inherent in the six-factor test created questions of fact for the jury to evaluate rather than questions of law for the court to decide. *Id.* at 470. The Fifth Circuit rejected the plaintiff's contention and upheld the lower court's decision to grant summary judgment in favor of the District Attorney. *Id.* at 473.

Applying the six-factor test to the facts in the instant action, the court finds that a similar decision to that in *Gunaca* is warranted. The first two factors the court must consider are whether the Mr. Folmar had plenary powers of appointment and removal over Ms. Dubisar–Dewberry and whether Ms. Dubisar–Dewberry was personally accountable to only Mr. Folmar. As to the first factor, Ms. Dubisar–Dewberry argues that because her position was funded by DHR and because DHR required Mr. Folmar to document her time, attendance, and job duties, she was under the indirect supervision of DHR. In regard to the second factor, she claims that she was supervised by other persons in the office besides Mr. Folmar including Mr. Smith and Mr. Morgan. The court finds neither argument persuasive.

First, the court notes that Ms. Dubisar–Dewberry admits that she was appointed pursuant to § 12–17–220, *Code of Alabama*. Mr. Smith's Aff. at ¶ 3; Pl.'s Resp. to Def.'s Mot. to Dismiss at ¶ 5. This section provides as follows:

> The district attorney of each circuit is hereby authorized to employ, in such a manner as he shall determine necessary, assistant district attorneys, investigators, clerical, secretarial and other personnel, who shall serve at the pleasure of the district attorney, and shall not be considered employees under the State Merit System.

§ 12–17–220, *Code of Alabama*. As such, the court finds the facts in the *Gunaca* decision persuasive because that court focused on the text of a relevant state statute similar to the one in the instant case.[3] Thus, in both the instant action and in *Gunaca*, each District Attorney was authorized, pursuant to his respective state statute, to appoint and remove personnel members when necessary to further the proper and efficient operation and administration of their respective offices. Furthermore, in both cases it is undisputed that the district attorney was the sole official authorized to hire and fire personnel. (emphasis added). The *Gunaca* court found the state statute sufficient to satisfy the first two factors of the six-factor test. *Gunaca*, 65 F.3d at 471. Similarly, based on the finding of the *Gunaca* court and the language of the Alabama statute, the court finds both that the Alabama statute provides the District Attorney with plenary powers of appointment and removal and that Ms. Dubisar–Dewberry was personally accountable to Mr. Folmar.

---

2. Because the personal staff exception in the ADEA, 29 U.S.C. § 630(f), is identical to the personal staff exception found in Title VII, 42 U.S.C. § 2000e(f), courts construe the two exceptions consistently. *Gunaca*, 65 F.3d at 470; *see also Montgomery v. Brookshire*, 34 F.3d 291, 294 (5th Cir.1994).

3. *Gunaca*, 65 F.3d at 471, 473. Specifically, section 41.102 of the Texas Government Code (1988) provides that: "[a] prosecuting attorney may employ the assistant prosecuting attorneys, investigators, secretaries, and other office personnel that in his judgment are required for the proper administration of the office." Furthermore, section 41.105 of the Texas Government Code (1988) provides that: "[a]ll personnel of a prosecuting attorney's office are subject to removal at the will of the prosecuting attorney."

Ms. Dubisar–Dewberry next argues that the Office of the District Attorney has presented no evidence in support of the third factor, whether the person in the position at issue represents the elected official in the eyes of the public. She also notes that she is not the District Attorney's legal representative in child support matters. Here, the court believes that it is important to mention that the *Gunaca* court determined that an investigator in the district attorney's office satisfied the third factor notwithstanding the fact that an investigator does not represent the District Attorney in legal proceedings. *Gunaca*, 65 F.3d at 471. The court reasoned that investigators are representatives of the District Attorney even though they do not have law licenses because the functions they perform are associated with the functions of a prosecutor and involve interaction with the public. *Id.* Similarly, the court finds that it is irrelevant whether Ms. Dubisar–Dewberry served as a legal representative of the District Attorney for purposes of this factor.

In her role as the child support coordinator, Ms. Dubisar–Dewberry interviewed people seeking support and enforcement of child support obligations. She discussed child support matters with lawyers and appeared in court proceedings. She also coordinated many activities related to child support in Coffee County including establishing paternity, establishing a child support obligation, and enforcing the child support obligation. Furthermore, she was the only nonlegal employee that represented the Coffee County Child Support Unit. In fact, when asked "[w]ere you generally known as like the child support lady for Coffee County," she responded "[y]es." Ms. Dubisar–Dewberry's Dep. at 75. Based on these facts combined with her statement in her deposition, the court finds that Ms. Dubisar–Dewberry performed duties associated with the functions of a prosecutor and that the residents of Coffee County knew Ms. Dubisar–Dewberry as the head of child support for the Office of the District Attorney.

The court also finds that the Office has met the fourth factor, *i.e.,* that Mr. Folmar exercised a considerable amount of control over the position. Ms. Dubisar–Dewberry contends that the child support cases based upon AFDC payments originated at the DHR office in Coffee County. However, notwithstanding this fact, it is clear that Mr. Folmar had the authority to determine whether the Office would prosecute these child support cases. Additionally, Ms. Dubisar–Dewberry's employment was at the pleasure of Mr. Folmar.

As to the fifth factor, Ms. Dubisar–Dewberry argues that the level of her position within the chain of command at the Office of the District Attorney was too low to satisfy the factor because "there was no other person lower on the chain of command than plaintiff except one clerical person." Pl.'s Resp. to ·Def.'s Mot. for Summ.Judg. at 4. As such, Ms. Dubisar–Dewberry contends that she was never "in charge" of the child support unit in Coffee County. Ms. Dubisar–Dewberry is correct in asserting that the personal staff exception was intended primarily to exempt from Title VII coverage only those who were immediate subordinates of the elected official. Importantly, however, the *Gunaca* court noted that "[I]n a small office, an employee's placement in the chain of command is less significant to a consideration of the nature and circumstances of the employment relationship between employee and employer." *Id.* at 472–73. Thus, in *Gunaca*, the court found that because the district attorney's office employed only fifty-five appointed officials, the level of the investigator in the chain of command, which was three levels below the District Attorney, was not very significant to the ultimate determination of whether the investigator fell within the personal staff exception. *Id.* In the instant action, Mr. Folmar appointed only eighteen employees, thirty-seven less positions than the district attorney appointed in *Gunaca.* Consequently, the court finds little significance in the fact that Ms. Dubisar–Dewberry answered to not only the District Attorney, but also to the Chief Deputy District Attorney, the Chief Investigator, and the Chief Administrative Assistant.

Finally, the court believes that the intimacy of the working relationship between Mr. Folmar and Ms. Dubisar–Dewberry is sufficient to meet the requirements of the sixth factor. While it is true that Mr. Folmar did not have day-to-day contact with Ms. Dubi-

sar–Dewberry, he also did not have day-to-day contact with any person appointed by him because he had to maintain offices in both Troy and Enterprise. Furthermore, Mr. Folmar was routinely advised of matters relating to the administration and management of the child support unit and he was personally responsible for every division in the district attorney's office.

## CONCLUSION

While most Title VII cases involving the "personal staff" exception should not be decided at the summary judgment stage, the court finds that the factors applied to the instant action are supported by state law, Ms. Dubisar–Dewberry's testimony, and other summary judgment evidence. *See Gunaca*, 65 F.3d at 473. Thus, based on the foregoing analysis, the court finds that the Office of the District Attorney's motion for summary judgment is due to be granted. A judgment in accordance with this memorandum opinion will be entered separately.