**UNITED STATES COURT OF APPEALS**
**FIFTH CIRCUIT**

_____

No. 97-20049

(Summary Calendar)
_____

LESLIE A TAYLOR,

Plaintiff-Appellant,

versus

JOHN J CALLAHAN, Acting Commissioner of Social
Security,

Defendant-Appellee.

Appeal from the United States District Court
For the Southern District of Texas
(H-96-CV-1184)

August 29, 1997

Before DAVIS, EMILIO M. GARZA, and STEWART, Circuit Judges.

PER CURIAM:[*]

Leslie A. Taylor appeals the district court's grant of summary

judgment in favor of the Commissioner of Social Security, affirming

the denial of her application for disability insurance benefits.

We affirm.

---

[*]    Pursuant to 5TH CIR. R. 47.5, the court has determined
that this opinion should not be published and is not precedent
except under the limited circumstances set forth in 5TH CIR. R.
47.5.4.

Taylor applied for disability insurance benefits on December 1, 1992, alleging that she had become disabled on September 17, 1991, due to fibromyalgia which caused her muscle pain and headaches. After the Social Security Administration denied her application for benefits, Taylor requested a hearing before an administrative law judge ("ALJ").

Since 1991, Taylor has been treated for pain and other symptoms allegedly related to her condition by Dr. Anh Cacciatore at the Kelsey-Seybold Clinic. In addition to the fibromyalgia, Taylor has been diagnosed with depression. She takes several pain medications, as well as antidepressant medication.

On August 25, 1992, Taylor complained of a headache that had lasted for two days, followed by aching and weakness, especially in her hands. Upon examination, however, she was found to have normal strength in her hands. On September 29, 1992, Taylor reported improvement in her headaches with medication, but Dr. Cacciatore reported spasm of Taylor's paracervical muscles. On November 23, 1992, Taylor reported to Dr. Cacciatore that she had had to cease vacuuming due to pain. Dr. Cacciatore treated Taylor with trigger point injections, completed a functional capacity questionnaire, and refilled a prescription for Pamelor.

On January 23, 1993, Steven Rubenzer, Ph.D., performed a psychological evaluation of Taylor. She reported that she was depressed and anxious due to fibromyalgia and headaches, but that

she could drive, handle money, and pay her bills. Dr. Rubenzer reported that when Taylor was not in pain, she was able to care for herself, socialize, and perform household tasks without assistance. Dr. Rubenzer diagnosed "major depression, single episode, moderate" and concluded that "[o]verall [Taylor] appears to possess both the intellectual and academic abilities to function effectively on a day to day basis."

Dr. Cacciatore examined Taylor again on February 12, 1993. Taylor reported that she could perform light housework and requested a rheumatology referral. Rheumatologist Martin Fischer, M.D., examined Taylor on February 19, 1993. From March through July 1993, Taylor received treatment for epigastric pain.

A neurological examination of Taylor on July 15, 1993 was normal. However, on July 21, she complained of pain in her right third finger that caused her to drop things. The finger was normal upon examination. Taylor reported that, although medication had improved her mood, she still had pain and headaches. Dr. Fischer reported that Taylor's neck x-rays and cervical spine MRI were normal.

In 1994, Taylor again received treatment for epigastric pain from March through May. In October 1994, on a referral by Taylor's attorney, Houston Work and Fitness conducted a functional capacity evaluation of Taylor. The physical therapists who examined Taylor reported that she sat for twenty minutes and stood and walked for fifteen minutes, complaining of pain. A lifting test was

discontinued after Taylor complained of pain upon lifting three pounds. Nonetheless, she had normal or near normal ranges of motion for all extremities except her shoulders, left hip extension and abduction, right hip extension, and dorsiflexion of both ankles. Manual muscle testing for strength revealed normal strength in Taylor's neck, fair to normal trunk strength, and good to normal arm and hand strength (with the exception of fair strength in her right elbow and poor strength in her right thumb). Taylor had good to normal leg strength, with the exception of fair strength in her toes. Her grip strength was initially measured at 69 percent of normal on the left and 54 percent of normal on the right, but her strength decreased on a subsequent test.

On October 28, 1994, Dr. Cacciatore stated that Taylor could sit three hours per day, stand one hour per day, walk one hour per day, and occasionally lift and carry ten pounds. She reported that Taylor's only objective sign of pain was muscle spasm, and she described Taylor's pain as moderate.

At the hearing before the ALJ on November 2, 1994, Taylor complained of arthritis in her right thumb and weakness in both hands. She stated that her activities included getting her sons ready for school, sitting most of the day and watching television or reading, a little cooking, and doing arts and crafts when she felt up to it. She also stated that she had five or six days each month when she could not get out of bed.

Dr. Craddock Duren, a specialist in internal medicine,

-4-

testified at the hearing as a medical advisor. He stated that fibromyalgia is treatable and that Taylor was taking the appropriate medications for her condition (nonsteroid anti-inflammatory drugs and tricyclic antidepressants). He testified that based on the objective medical evidence in the record, Taylor could frequently lift five pounds, occasionally lift and carry up to ten pounds, and sit for eight hours per day with a sit/stand option. He suggested that Taylor seek a repetitive, low-stress job with minimal contact with the public. In response to questioning by Taylor's attorney, Dr. Duren stated that he disagreed with the assessment by Houston Work and Fitness that Taylor could lift only three pounds because it was inconsistent with the finding that she had 90 percent or greater of the normal range of motion for her arms.

Dr. Ronald DeVere, a consulting neurologist, examined Taylor in December 1994. Dr. DeVere found no neurological deficits, but concluded that Taylor's "aches and pains . . . are certainly compatible with fibromyalgia." He stated that Taylor's "difficulty in functioning is basically based on chronic pain which does not appear to be based on any primary neurological disorder." Based on this examination, Dr. DeVere concluded that Taylor could lift five to ten pounds, stand and walk for eight hours per day, and sit for six to eight hours per day.

Dr. Stuart Rosenthal, another consulting physician, examined Taylor in March 1995. He found that, although she had multiple

subjective complaints of musculoskeletal pain, she had no objective abnormalities.  He concluded that Taylor could lift between ten and fifteen pounds and that she had no other significant functional limitations.

The ALJ concluded that Taylor is not disabled because, although she cannot perform her former work as a legal secretary, she can perform other semi-skilled and unskilled sedentary jobs which exist in significant numbers in the economy.  After the Appeals Council denied Taylor's request for review, she filed a complaint in federal district court seeking judicial review of the ALJ's decision.  The district court found the ALJ's decision supported by substantial evidence and consistent with relevant legal standards and therefore granted summary judgment for the Commissioner.  Taylor appeals.

II

Our review of the Commissioner's denial of disability benefits is limited to determining whether the decision is supported by substantial evidence in the record and whether the proper legal standards were used in evaluating the evidence. *Villa v. Sullivan*, 895 F.2d 1019, 1021 (5th Cir. 1990).  Substantial evidence is more than a scintilla, less than a preponderance, and is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.  *Id.* at 1021-22.  In applying this standard, we must review the entire record to determine if such evidence is present.

*Id.* at 1022. However, we may neither reweigh the evidence in the record nor substitute our judgment for that of the Commissioner. *Id.*

The Commissioner evaluates disability claims by answering the following sequential questions:

    (1)  Is the claimant currently working?
    (2)  Can the impairment be classified as severe?
    (3)  Does the impairment meet or equal a listed impairment in Appendix 1 of the Commissioner's regulations? (If so, disability is automatic.)
    (4)  Can the claimant perform past relevant work?
    (5)  Can the claimant perform other work?

20 C.F.R. § 416.920. In this case, the ALJ concluded that Taylor can perform semi-skilled and unskilled sedentary jobs. The ALJ thus concluded that Taylor is not disabled.

Dr. Cacciatore opined that Taylor could sit only three hours per day, stand one hour per day, walk one hour per day, and lift ten pounds. She supported this opinion with objective medical findings of muscle spasm, symmetrical trigger points, and a possible herniated disc. In finding that Taylor was not disabled, the ALJ disregarded Dr. Cacciatore's opinion because the reports and testimony of the consulting physicians were all to the contrary. Taylor challenges the ALJ's rejection of her treating physician's evaluation in favor of the opinions of the consulting examining specialists.

While the opinion and diagnosis of a treating physician should be afforded considerable weight in determining disability, the ALJ

-7-

has the sole responsibility for determining a claimant's disability status.  *Martinez v. Chater*, 64 F.3d 172, 176 (5th Cir. 1995).  The ALJ is free to reject the opinion of any physician when the evidence supports a contrary conclusion.  *Id.*  In addition, an ALJ may give less weight, little weight, or even no weight to a physician's testimony where her statements are brief and conclusory, not supported by medically acceptable clinical laboratory diagnostic techniques, or otherwise unsupported by the evidence.  *Greenspan v. Shalala*, 38 F.3d 232, 237 (5th Cir. 1994), *cert. denied*, __ U.S. __, 115 S. Ct. 1984, 131 L. Ed. 2d 871 (1995).

In this case, the ALJ received extensive evidence from several consulting physicians regarding Taylor's condition and limitations. Dr. Fischer reported that an examination of Taylor's fingers showed that they were normal.  Dr. DeVere found no neurological deficits upon examination of Taylor.  Dr. DeVere opined that, based on Taylor's subjective complaints, she could lift and carry five to ten pounds and sit six to eight hours per day.  He found no limitation on her ability to stand and walk.  Dr. Rosenthal reported no objective abnormalities and concluded, based on Taylor's subjective complaints, that she could lift up to fifteen pounds and frequently lift and carry ten pounds.  Both Dr. DeVere and Dr. Rosenthal considered Taylor's subjective complaints in assessing her residual functional capacity and still determined

that she could perform sedentary work.

Dr. Duren testified that Taylor was receiving the appropriate medications for treatment of fibromyalgia. He also stated that, based on the objective medical evidence in the record, Taylor could frequently lift five pounds, occasionally lift and carry up to ten pounds, and sit for eight hours per day with a sit/stand option. In light of this evidence, the ALJ could properly credit the reports and testimony of the consulting physicians and discount those of Taylor's treating physician.

Taylor argues that the ALJ did not provide sufficient reasons for finding her subjective complaints of pain lacking in credibility. To the contrary, the ALJ found Taylor's complaints of pain not fully credible because they were not supported by objective medical findings, because Taylor's daily activities were inconsistent with her claims of pain, and because Taylor testified that medication helped relieve her pain. *See Harper v. Sullivan*, 887 F.2d 92, 96 (5th Cir. 1989) ("The mere existence of pain does not automatically create grounds for disability, and subjective evidence of pain will not take precedence over conflicting medical evidence."). The ALJ had no obligation to credit Taylor's testimony over the objective evidence in the record. *See, e.g.*, *Anthony v. Sullivan*, 954 F.2d 289, 295 (5th Cir. 1992) (stating that ALJ need not credit subjective evidence over conflicting medical evidence); *Villa*, 895 F.2d at 1024 ("Subjective evidence

need not take precedence over objective evidence."). We therefore find no error in the ALJ's evaluation of Taylor's testimony.

Taylor next argues that the district court erred in upholding the ALJ's decision on a ground not articulated in the ALJ's decision. To the contrary, the district court's decision affirmed the ALJ's decision on a ground specifically articulated by the ALJ))that the limitations described by Taylor's treating physician are contradicted by the findings of the consulting physicians.

Taylor also contends that the ALJ purposefully ignored the evidence and the law to deny Taylor's application based solely on the fact that Taylor has been receiving $1,400 per month in disability insurance from her former employer. The ALJ's lengthy and comprehensive decision refutes this frivolous contention.

Taylor maintains that the ALJ failed to develop the record regarding the "nature and severity of Taylor's mental disorder." Specifically, she contends that the vocational expert who testified at the hearing was uncertain of the meaning of Taylor's diagnosis of "major depression, single episode, moderate." Taylor does not, however, explain how she was prejudiced by this alleged uncertainty. Thus, we will not reverse the ALJ's decision on this ground. *See Kane v. Heckler*, 731 F.2d 1216, 1220 (5th Cir. 1984) (explaining that, where ALJ fails to develop adequate record, claimant must show that she was prejudiced as result of scanty hearing by showing that, had ALJ "done his duty," she could and

would have adduced evidence that might have altered result of proceeding).

Finally, Taylor argues that new, intervening administrative rulings issued in July 1996 after the administrative denial of Taylor's claim, but prior to adjudication by the district court, require remand to the administrative agency for further evaluation. Taylor filed her complaint in district court in April 1996, and moved for summary judgment in August 1996. Thus, Taylor had the opportunity to raise this issue in district court and failed to do so; she provides no explanation for this failure. As this case does not present exceptional circumstances, we will not address this argument. *See, e.g.*, *Rutland v. Moore*, 54 F.3d 226, 232 n.12 (5th Cir. 1995) ("As is well established, and with very narrow exception, we do not consider issues raised for the first time on appeal . . . ."); *Brantley v. Surles*, 804 F.2d 321, 324 (5th Cir. 1986) ("We will not consider matters not raised before the district court unless a miscarriage of justice would result.").
AFFIRMED.