88 F.Supp.2d 1334 (2000)
Jackie LAURIE, et al., Plaintiffs,
v.
ALABAMA COURT OF CRIMINAL APPEALS, Defendant.
No. Civ.A. 98-D-506-N.
United States District Court, M.D. Alabama, Northern Division.
March 15, 2000.
*1335 Kathleen A. Brown, Mark G. Montiel, Roianne H. Frith, Montgomery, AL, for plaintiffs.
Raymond L. Jackson Jr., Alice Ann Byrne, Office of Attorney General, Montgomery, AL, for defendant.

MEMORANDUM OPINION
DE MENT, District Judge.
Before the court is Defendant Alabama Court of Criminal Appeals' ("ACCA") challenge to the court's subject matter jurisdiction raised in the ACCA's Motion For Evidentiary Hearing ("Mot.Evid.H'rg"), filed February 28, 2000. The ACCA questions this court's subject matter jurisdiction, asserting that it is not an "employer" within the meaning of Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. §§ 2000e to 2000e-17 ("Title VII"). The ACCA contends that, during the relevant statutory time period, it employed less than fifteen Title VII "employees" and, thus, does not satisfy Title VII's requirement that a Title VII "employer" must employ at least fifteen "employees." See 42 U.S.C. §§ 2000e(b) & 2000e(f). Namely, the ACCA argues that certain positions at the ACCA fall into the "personal staff" and "immediate adviser" exceptions to Title VII's definition of "employee" and, therefore, may not be counted as "employees" in determining whether the threshold number of fifteen is satisfied. Id.
In an Order entered on March 7, 2000 ("March 7, 2000 Order"), the court granted the ACCA's Motion For Evidentiary Hearing and, on March 10, 2000, held an evidentiary hearing to ascertain the threshold facts concerning the issue of subject matter jurisdiction. (March 7, 2000 Order at 1-13.) Plaintiffs and the ACCA filed supplemental evidence on March 13 and 14, 2000. After careful consideration of the arguments of counsel, the facts adduced at the evidentiary hearing on March 10, 2000, and the record as a whole, the court finds that it lacks subject matter jurisdiction *1336 over this action and that Plaintiffs' lawsuit is due to be dismissed.

I. PROCEDURAL HISTORY AND FACTUAL BACKGROUND
The procedural history and factual background are set forth in detail in the court's Memorandum Opinion And Order, entered on February 14, 2000 ("Feb. 14, 2000 Order"), and the Court's March 7, 2000 Order. The procedural history and factual background need not be repeated in full here.
However, the court will summarize its prior findings in its February 14 and March 7, 2000 Orders pertaining to the ACCA's Title VII "employer" status. Namely, in its February 14, 2000 Order, in which the court ruled on the ACCA's Motion For Summary Judgment, the court found that, under Lyes v. City of Riviera Beach, Fla., 166 F.3d 1332, 1340-42 (11th Cir.1999), the ACCA was a single "employer" for purposes of counting "employees" under Title VII. (Feb. 14, 2000 Order at 56-65.) The court found that, contrary to Plaintiffs' argument, the ACCA should not be aggregated with all the courts within the State of Alabama's Unified Judicial System. (Id.)
After finding that the ACCA was a "separate and distinct" entity for purposes of counting employees, the court attempted to determine whether the ACCA was comprised of fifteen or more Title VII "employees." (Id. at 65-75.) However, the evidence submitted on summary judgment by the ACCA was incomplete, confusing and contradictory regarding the number of Title VII "employees" at the ACCA. Thus, ultimately, the court denied summary judgment on the issue of whether the ACCA employed fifteen "employees" under Title VII. (Id. at 75.)
Subsequently, on February 28, 2000, the ACCA filed its Motion For An Evidentiary Hearing, arguing that whether the ACCA employed fifteen or more employees during the relevant statutory time period was an issue for the court to decide, not the jury. In its March 7, 2000 Order, after analyzing Scarfo v. Ginsberg, 175 F.3d 957, 961 (11th Cir.1999), and Garcia, M.D. v. Copenhaver, Bell & Assocs., 104 F.3d 1256 (11th Cir.1997), the court made the following findings of fact and conclusions of law:
(1) Defendant's Motion For Evidentiary Hearing contains therein a challenge to the court's subject matter jurisdiction over this action.
(2) The Parties cannot waive subject matter jurisdiction; thus, the court "may consider subject matter jurisdiction claims at any time during litigation." Scarfo, 175 F.3d at 960.
(3) Plaintiffs have the burden of establishing subject matter jurisdiction and demonstrating that Defendant is a Title VII "employer" with fifteen or more employees for the requisite period provided under the statute. See Lyes v. City of Riviera Beach, Florida, 166 F.3d 1332, 1341 n. 3 (11th Cir.1999) (noting that, in the Eleventh Circuit, "counting employees is a jurisdictional inquiry"); see also McKenzie v. Davenport-Harris Funeral Home, 834 F.2d 930, 932 (11th Cir.1987). As discussed during the telephone conference on March 6, 2000, at the evidentiary hearing, Plaintiffs shall present their evidence and arguments first. Defendant shall make available at the hearing any employees from the Alabama Court of Criminal Appeals whom Plaintiffs desire to question;
(4) In the Eleventh Circuit, "counting employees" under Title VII "is a jurisdictional inquiry." Lyes, 166 F.3d at 1340 n. 3.
(5) When the court is faced with factual disputes regarding subject matter jurisdiction, the court serves as the fact-finder and may weigh the evidence, provided the challenge to subject matter jurisdiction does not implicate an element of the cause of action. Because subject matter jurisdiction goes to the power of the Court to hear the case, factual issues regarding subject matter jurisdiction are not resolved by a jury. Instead, that responsibility is for the *1337 Court. Garcia, 104 F.3d at 1261; Scarfo, 175 F.3d at 960-961. Based on the facts of this case, the court finds that, with the exception of Plaintiffs' job positions, the court can weigh the evidence, if the facts are disputed, to ascertain the total number of individuals employed at the Alabama Court of Criminal Appeals and whether the threshold level of fifteen employees is satisfied. Thus, for purposes of the evidentiary hearing and the court's findings at this stage, the court will assume that the positions held by Plaintiffs are included as qualifying "employees."
(6) ... [I]n interpreting "the current or preceding calendar year," as set forth in 42 U.S.C. § 2000e(b), the court will apply the following principles. The Supreme Court has determined that the "payroll method" is the appropriate method to determine when an employer "has" an employee. Walters v. Metropolitan Educ. Enters., Inc., 519 U.S. 202, 206, 117 S.Ct. 660, 136 L.Ed.2d 644 (1997). Using this method, a court must count the number of employees on the payroll for each week in the current or preceding calendar year. Id. "`[C]urrent calendar year' refers to the year in which the alleged violation occurred and includes the calendar year from January 1 through December 31." Komorowski v. Townline Mini-Mart & Restaurant, 162 F.3d 962, 965 (7th Cir.1998). An employee who departed in the middle of a calendar week does not count toward the fifteen-employee minimum for that week. Walters, 519 U.S. at 209, 117 S.Ct. 660. Here, because the last act of alleged sexual harassment occurred in 1996, the court must examine the individuals employed at the Court of Criminal Appeals from January 1, 1995 through December 31, 1996.
(March 7, 2000 Order at 10-12.) Based on these findings, the court granted the ACCA's Motion For Evidentiary Hearing and held said hearing on March 10, 2000.

II. STANDARD OF REVIEW
At the March 10, 2000 evidentiary hearing, Plaintiffs and the ACCA agreed with and had no objections to the court's findings of fact and conclusions of law set forth in its March 7, 2000 Order. (March 7 Order at 10-12.) In particular, neither Party objected to the court weighing the evidence to determine whether individuals employed at the ACCA, other than Plaintiffs, were Title VII "employees." Accordingly, the court's rulings in its March 7, 2000 Order are uncontested and represent the law of the case.
Alternatively, the court finds that the material evidence adduced at the March 10, 2000 evidentiary hearing and submitted on March 13 and 14, 2000 is undisputed. Thus, the court finds that it may properly resolve on summary judgment the issue of whether the ACCA employs at least fifteen Title VII "employees." (March 7, 2000 Order at 9-10; March 8, 2000 Order); see also FED.R.CIV.P. 56.

III. TITLE VII'S DEFINITION OF "EMPLOYER" AND "EMPLOYEE"
Title VII provides that an employer may not "discriminate against any individual with respect to his [or her] compensation, terms, conditions, or privileges of employment, because of such individual's ... sex." 42 U.S.C. § 2000e-2(a)(1). The statute defines "employer," insofar as presently relevant, as follows:
(b) The term "employer" means a person[1] engaged in an industry affecting commerce who has fifteen or more employees for each working day in each of *1338 twenty or more calendar weeks in the current or preceding calendar year,....
42 U.S.C. § 2000e(b).
In turn, Title VII defines "employee," in pertinent part, as follows:
an individual employed by an employer, except that the term "employee" shall not include any person elected to public office in any State or political subdivision of any State by the qualified voters thereof, or any person chosen by such officer to be on such officer's personal staff, ... or an immediate adviser with respect to the exercise of the constitutional or legal powers of the office....
42 U.S.C. § 2000e(f).
Title VII does not define "personal staff." However, as the court set forth in its February 14, 2000 Order and as discussed at the evidentiary hearing on March 10, 2000, in evaluating whether an individual is a member of an elected official's "personal staff," courts apply the following six factors:
(1) [W]hether the elected official has plenary powers of appointment and removal, (2) whether the person in the position at issue is personally accountable to only that elected official, (3) whether the person in the position at issue represents the elected official in the eyes of the public, (4) whether the elected official exercises a considerable amount of control over the position, (5) the level of the position within the organization's chain of command, and (6) the actual intimacy of the working relationship between the elected official and the person filling the position.
Teneyuca v. Bexar County, 767 F.2d 148, 151 (5th Cir.1985); see also Montgomery v. Brookshire, 34 F.3d 291, 295 (5th Cir. 1994); Dubisar-Dewberry v. Dist. Attorney's Office, 927 F.Supp. 1479, 1483-84 (M.D.Ala.1996); (Feb. 14, 2000 Order at 44). Moreover, case law indicates that the sixth factor is the most important factor. See Cromer v. Brown, 88 F.3d 1315, 1322 (4th Cir.1996) ("In general, the examination should focus on whether the employee worked in an intimate and sensitive position of trust, close to the elected official."); United States v. Gregory, 818 F.2d 1114, 1117 (4th Cir.1987) (finding that closeness must engender a "highly intimate relationship"); Owens v. Rush, 654 F.2d 1370, 1376-77 (10th Cir.1981) ("Considering the nature of the Undersheriff's position and the close working relationship required to perform effectively in the position, we must conclude that plaintiff was in the type of job which Congress intended to be within the personal staff exception...."); Curl v. Reavis, 740 F.2d 1323, 1328 (4th Cir.1984); (Feb. 14, 2000 Order at 44.)
However, in determining whether an individual is an elected official's "immediate adviser," as set forth in 42 U.S.C. § 2000e(f), the Teneyuca six factors do not apply. Rutland v. Moore, 54 F.3d 226, 231 (5th Cir.1995). In rejecting the six-factor Teneyuca test, the Rutland court explained that, "[n]eedless to say, whether an individual is on an elected official's `personal staff can be much more elusive than whether he [or she] is an immediate legal adviser to that official. It also goes without saying that a legal adviser, in general, occupies a more confidential (or, in the legal sense, privileged) relationship with the official than a member of his personal staff." Id. Further, because it was clear in Rutland that a Mississippi special assistant attorney general was the Mississippi Attorney General's "immediate adviser" within the meaning of the Title VII "employee" exemption, the Fifth Circuit held that, "for this case, [it] need not fashion new factors for [the] immediate legal adviser analysis." Id. Other than Rutland, the court has not found any cases dealing with the issue of who is exempted from Title VII by virtue of being an elected official's immediate adviser.

IV. FINDINGS OF FACT
At the March 10, 2000 evidentiary hearing, the court heard testimony and received evidence on the issue of whether the ACCA was a Title VII "employer" with fifteen or more "employees" during twenty *1339 weeks in the calendar years of 1995 and 1996. The court admitted into evidence twelve exhibits offered by Plaintiffs and twenty-nine exhibits offered by the ACCA.[2] The court also heard testimony from the following individuals: Lane Mann ("Mann"), who has been employed as the clerk of the court for the ACCA since 1990; Linda Cowen ("Cowen"), who is the dockets clerk for the ACCA and has been employed with the ACCA since 1975; Judge John Patterson ("Judge Patterson"), who served as an elected judge on the ACCA for thirteen years, including the years 1995-1996;[3] Judge Sue Bell Cobb ("Judge Cobb"), who has served as an elected judge on the ACCA since January 1, 1995; and Barbara Kummel, who is the Judicial Personnel Director for the Administrative Office of Courts.
Based on the evidence adduced at the March 10, 2000 evidentiary hearing, the stipulations by the Parties, and the supplemental evidence submitted by Parties on March 13 and 14, 2000, the court makes the following findings of fact:
(1) Plaintiffs and the ACCA stipulate that, for purposes of counting employees, all individuals who worked in the clerk's office are "employees" within the meaning of Title VII. The Parties further agree that, during 1995 and 1996, the total number of individuals employed in the clerk's office, and thus, the total number of Title VII "employees," is as follows:
From 01/01/95 to 05/12/95  9 employees
From 05/13/95 to 06/21/96  8 employees
From 06/22/96 to 08/30/96  9 employees
From 08/31/96 to 12/31/96  8 employees[4]
(ACCA's Ex. 29.)
(2) Plaintiffs and the ACCA stipulate that the number of staff attorneys[5] employed at the ACCA during the calendar years 1995 and 1996 is as follows:
From 01/01/95 to 10/12/96  5 staff attorneys
From 10/13/96 to 11/08/96  4 staff attorneys
From 11/09/96 to 12/31/96  5 staff attorneys
(ACCA's Ex. 27.)
(3) Plaintiffs and the ACCA stipulate that the elected judges on the ACCA and their laws clerks are not "employees" within the meaning of Title VII and, thus, are not counted as "employees" in determining whether the ACCA employed fifteen qualifying Title VII "employees" during the relevant statutory timeframe.[6]
(4) As explained in its March 7, 2000 Order, based on the holding in Garcia, supra, the court will not examine the positions which Plaintiffs held, or arguably held, during their tenure at the ACCA. In other words, the court will not rule on whether Plaintiffs' employment positions at the ACCA fall within the "personal staff" or "immediate adviser" exceptions to Title VII's definition of "employee." 42 U.S.C. § 2000e(f). Further, for purposes of counting employees, the court will assume that the types of positions held by Plaintiffs are positions that fall within Title VII's definition of "employee."
In order to ascertain Plaintiffs' positions at the ACCA, the court at the March 10, 2000 evidentiary hearing asked the Parties *1340 what job positions they contend Plaintiffs held during their employment with the ACCA. The Parties agree that Plaintiff Barbara Lindsey ("Lindsey") held the position of assistant clerk. Additionally, while it was undisputed that Lindsey performed the duties of the clerk of the court for approximately one year, Plaintiffs and the ACCA dispute whether Lindsey should be classified as the clerk of the court during that time period.
As to Plaintiff Jackie Laurie ("Laurie"), it is undisputed that, at least during 1995 and 1996, Laurie worked in the clerk's office. There also was some discussion as to whether, during the three-month period in 1983 when Laurie filled in as Judge Taylor's secretary, she should be classified as Judge Taylor's secretary.[7]
As set forth in (1), above, the Parties have stipulated that the clerk of the court, the assistant clerk and Laurie's position within the clerk's office should be included in the Title VII "employee" count. Thus, the only issue the court need resolve is whether the court should evaluate the status of the judges' confidential assistants under the Title VII definition of "employee." Because the evidence demonstrates that Laurie performed secretarial duties for Judge Taylor for approximately three months in 1983, the court will not evaluate whether this position or similar positions fall within one of the exceptions to Title VII's definition of "employee." In an abundance of caution, the court makes this finding in accordance with the holding in Garcia.[8]See 104 F.3d at 1256.
(5) It is undisputed that neither Lindsey nor Laurie ever held the positions of staff attorney or junior staff attorney. Thus, the court can and will examine below, in Section V, whether the positions of staff attorney and junior staff attorney satisfy the Title VII definition of "employee."
(6) The court finds that the total number of individuals employed at the ACCA during each payroll period in the calendar years 1995 and 1996 is accurately set forth in the payroll documents introduced as ACCA's Exhibit 26 and Plaintiffs' Exhibits 10 and 11. Plaintiffs' Exhibits 10 and 11 are the payroll documents maintained at the ACCA. ACCA's Exhibit 26 contains the payroll documents maintained at the Administrative Office of Courts. Kummel testified, and the court independently verified, that the total number of individuals employed by the ACCA during 1995 and 1996 is the same in Plaintiffs' Exhibits 10 and 11 and ACCA's Exhibit 26. The only distinction between Plaintiffs' Exhibits 10 and 11 and ACCA's Exhibit 26 is the format in which the payroll records were prepared. ACCA's Exhibit 26 is compiled in a "position format" and lists each judge *1341 and the staff purportedly assigned to each judge. On the other hand, Plaintiffs' Exhibits 10 and 11 list the judges on separate payroll records and randomly list all other individuals on a separate printout. Plaintiffs object to the court relying on the ACCA's "position format" payroll records in determining whether certain individuals worked for an individual judge, as opposed to the court as a whole. As to Plaintiffs' objection, the court notes that, in Section V, below, the court has made its findings as to applicability of the Title VII "employee" exemptions independent from ACCA's Exhibit 26 "position format" payroll records. Accordingly, Plaintiffs' objection is moot.
(7) The court, having heard the testimony and having examined the demeanor of the witnesses, finds that both Plaintiffs and the ACCA's witnesses were credible and that the material testimony from both Plaintiffs and the ACCA's witnesses was undisputed.
(8) The court finds that the ACCA during the 1995 and 1996 calendar years employed the following categories of positions: elected judges, confidential assistants, staff attorneys, junior staff attorneys, law clerks (also referred to as "legal research aides"), a clerk of the court, an assistant clerk of the court, a dockets clerk, executive assistants and an administrative assistant.
(9) For purposes of determining the number of junior staff attorneys and law clerks employed during each pay period in 1995 and 1996, the court has relied on Kummell's testimony that the summary charts submitted by the ACCA accurately reflect the number of junior staff attorneys and law clerks employed during these pay periods. (ACCA's Ex. 28.) The court further emphasizes that there is no evidence in the record demonstrating that the number of junior staff attorneys and law clerks is different than the number confirmed by Kummel.
(10) It is undisputed that, during each week in the 1995 and 1996 calendar years, the ACCA employed five elected judges.
(11) Based on the court's findings of fact, as set forth in (1)-(10), above, the following chart summarizes the court's findings as to the total number of individuals employed at the ACCA and the total number of elected judges, staff attorneys, junior staff attorneys, law clerks and clerk's office employees during the 1995 and 1996 calendar years:[9]

 Elected Staff Jr. Staff Clerk's
Pay Period Judges Attorneys Attorneys Law Clerks Office Total
01/01/95 - 01/06/95 5 5 5 5 9 33
01/07/95 - 01/20/95 5 5 5 5 9 33
01/21/95 - 02/03/95 5 5 5 5 9 33
02/04/95 - 02/17/95 5 5 6 4 9 33
02/18/95 - 03/03/95 5 5 6 4 9 33
03/04/95 - 03/17/95 5 5 6 4 9 34
03/18/95 - 03/31/95 5 5 5 4 9 34
04/01/95 - 04/14/95 5 5 5 5 9 34
04/15/95 - 04/28/95 5 5 5 5 9 34

*1342
04/29/95 - 05/12/95 5 5 5 5 9 34
05/13/95 - 05/26/95 5 5 5 5 8 34
05/27/95 - 06/09/95 5 5 5 5 8 33
06/10/95 - 06/23/95 5 5 5 5 8 33
06/24/95 - 07/07/95 5 5 5 5 8 34
07/08/95 - 08/21/95 5 5 5 5 8 33
07/22/95 - 08/04/95 5 5 5 5 8 33
08/05/95 - 08/18/95 5 5 5 5 8 33
08/19/95 - 09/01/95 5 5 5 5 8 33
09/02/95 - 09/15/95 5 5 6 4 8 33
09/16/95 - 09/29/95 5 5 6 4 8 33
09/30/95 - 10/13/95 5 5 6 4 8 33
10/14/95 - 10/27/95 5 5 6 4 8 33
10/28/95 - 11/09/95 5 5 5 5 8 33
11/10/95 - 11/22/95 5 5 5 5 8 34
11/23/95 - 12/08/95 5 5 5 5 8 33
12/09/95 - 12/22/95 5 5 5 5 8 33
12/23/95 - 01/05/96 5 5 5 5 8 33
01/06/96 - 01/19/96 5 5 5 5 8 34
01/20/96 - 02/02/96 5 5 5 5 8 33
02/03/96 - 02/16/96 5 5 5 5 8 33
02/17/96 - 03/01/96 5 5 5 5 8 33
03/02/96 - 03/15/96 5 5 5 5 8 33
03/16/96 - 03/29/96 5 5 5 5 8 33
03/30/96 - 04/12/96 5 5 5 5 8 33
04/13/96 - 04/26/96 5 5 5 5 8 33
04/27/95 - 05/10/96 5 5 5 5 8 33
05/11/96 - 05/24/96 5 5 5 5 8 33
05/25/96 - 06/07/96 5 5 5 5 8 33
06/08/96 - 06/21/96 5 5 5 5 8 34
06/22/96 - 07/03/96 5 5 5 5 9 33
07/04/96 - 07/19/96 5 5 5 5 9 34
07/20/96 - 08/02/96 5 5 4 5 9 34
08/03/96 - 08/16/96 5 5 4 6 9 34
08/17/96 - 08/30/96 5 5 4 6 9 34
08/31/96 - 09/13/96 5 5 4 6 8 34
09/14/96 - 09/27/96 5 5 3 9 8 33
09/28/96 - 10/11/96 5 5 4 10 8 35
10/12/96 - 10/25/96 5 4 4 11 8 37
10/26/96 - 11/08/96 5 4 4 11 8 39
11/09/96 - 11/22/96 5 5 4 11 8 37
11/23/96 - 12/06/96 5 5 4 11 8 38
12/07/96 - 12/20/96 5 5 4 11 8 38
12/21/96 - 12/31/96 5 5 4 11 8 38

(12) The court finds credible the testimony of Judges Patterson and Cobb, and in particular, their testimony regarding the job duties and assignment of the law clerks, staff attorneys and junior staff attorneys during 1995 and 1996.
(13) Judge Patterson testified that, throughout his tenure as an elected judge on the ACCA, which included the years 1995 and 1996, his "staff" consisted of a confidential assistant (i.e., secretary), law clerks, staff attorneys and junior staff attorneys. Judge Patterson stated that his staff was personally accountable to him and to no other judge. He alone supervised and assigned his staff work. He established the work hours and the "leave" policies. Additionally, he signed and maintained leave slips for his law clerks, staff attorneys and junior staff attorneys.
Judge Patterson would assign cases to his law clerks, staff attorneys and junior *1343 staff attorneys in order for them to research the legal issues and submit suggested opinions. Judge Patterson explained that he and his legal staff worked as a "team" in order to resolve the issues presented in each case. For example, on occasions, Judge Patterson and his law clerks, staff attorneys and junior staff attorneys would convene around a conference table and engage in legal debates on issues in cases. In fact, sometimes, Judge Patterson would change his legal opinion about the outcome of a particular case after discussing the issues with his law clerks, staff attorneys and junior staff attorneys. According to Judge Patterson, his legal staff worked "at his elbow," and he received advice from them on legal matters on "almost an hourly basis." Judge Patterson expressed that, because he had an annual average case load of 500 cases per year, it would be "impossible" for him to perform his duties as a judge without the assistance of his staff.
Furthermore, based on the sensitive and confidential issues discussed in his chambers, Judge Patterson had a policy that "everything said in chambers remained in chambers." Finally, Judge Patterson explained that his staff's conduct both inside and outside the court building was "very important."
(14) Judge Cobb testified that, during the calendar years 1995 and 1996, she employed law clerks, as well as senior and junior staff attorneys. Judge Cobb explained that her law clerks and senior/junior staff attorneys work in the same suite and "within twenty feet" of her. Judge Cobb has daily contact with her law clerks and senior/junior staff attorneys. Judge Cobb's legal staff works intimately with her in making decisions on the issues presented in cases.
Further, Judge Cobb explained that her senior staff attorney travels to law schools on her behalf in order to conduct initial interviews for law clerks. Finally, Judge Cobb stated that each judge sets all policies for his or her staff. For instance, Judge Cobb determines the standards for work hours, dress code and leave.
(15) Pursuant to a "Resolution" signed by the ACCA judges, which became effective December 1, 1983, the "staff attorneys" are "assigned individually to the judges of [the ACCA] for assignment of duties and supervision." (Pls.' Ex. 1.) The Resolution also states that the statutes' directive that the staff attorneys work "`at the pleasure of the court' [] shall be interpreted to be the same as at the pleasure of the judge for whom they work." (Id. ¶ 2, quoting ALA.CODE §§ 12-3-34, 12-3-35 (1995)).
(16) Plaintiffs and the ACCA submitted the ACCA's General Personnel Policy Statements ("policy statements") implemented in September 1993, October 1993, August 1996, October 1996 and December 1996. (Pl.s' Exs. 2 & 3; ACCA's Exs. 1, 5 & 6.) Each policy statement is signed by the five elected judges. While each policy statement contains revisions and supersedes its predecessor, the policy statements all include the following provisions:
Purpose. The purpose of this outline is, (1) to explain the employment status of persons serving this Court; (2) to establish and define the procedures that will be used by this Court in the future to facilitate employee advancement; and (3) to establish a written policy statement for this Court regarding the employment of new personnel.
. . . . .
Confidential Employees. All positions on the Court of Criminal Appeals are confidential in nature and the persons occupying such positions serve at the pleasure of their appointing judges; provided, however, that the employees of the Clerk's office shall serve at the pleasure of the Court. Although the employees of the Clerk's office serve at the pleasure of the Court, the Clerk of the Court shall serve as the supervising authority for said employees until such *1344 time as said authority may subsequently be altered or revoked by the Court.
. . . . .
Position Reclassification and Paygrade Adjustments. The Court of Criminal Appeals may at any time establish such new positions as it deems necessary and may adjust the paygrade heretofore established for any existing position on the Court.
. . . . .
Personnel Procedures Not Included Within This Policy Statement The Unified Judicial System Personnel Procedures established by the Administrative Director of Courts for trial court personnel shall be applicable to employees of this Court to the extent said procedures are not in conflict with the policy and procedures contained herein; provided, however, that any provision contained in said procedures that requires the approval of the administrative director of courts shall be construed to instead require the approval of this Court. It is specifically noted that employees of this Court do not obtain tenure and as such, the UJS personnel procedures relating to probationary raises shall have no application to employees of this Court.
(Id.) Attached to Plaintiffs' Exhibit 2, i.e., the September 1993 policy statement, is a memorandum signed by each elected judge, indicating that each judge had reviewed the Unified Judicial System Personnel Procedures. (Pl.s' Ex. 2.)
(17) The Unified Judicial System Personnel Procedures, referred to in (16), above, contains a chapter entitled "Equal Employment Opportunity." (Pls.' Ex. 9.) This chapter sets out the Unified Judicial System's policies on preventing discrimination in the workplace. (Id.) Namely, this chapter creates internal Equal Employment Opportunity ("EEO") grievance procedures and appoints personnel to manage them. This chapter includes a summary of the various constitutional and statutory provisions prohibiting discrimination, including Title VII. (Id.)
(18) The court has carefully reviewed Plaintiffs' Exhibit 4, which includes various orders issued by the five judges of the ACCA. Plaintiffs assert that Exhibit 4 demonstrates that the staff attorneys cannot be appointed and removed by an individual judge, but rather must be appointed and removed by an Order signed by all five ACCA judges. Contrary to Plaintiffs' assertion, the court finds that, at least as of 1993, after the 1992 enactment of § 12-4A-1 of the Code of Alabama, the individual judges, through the ACCA policy statements, had the power to hire and fire their staff attorneys and junior staff attorneys without approval from the other judges. ALACODE § 12-4A-1 (1992). The only exception, the court finds, is when the appointing judge seeks to impose a financial burden on the ACCA by either enhancing the entrance level salary of the appointee or by transferring leave which had been earned in another department of the State of Alabama. That is, anytime a hiring decision by an individual judge affects the ACCA's budget, the decision must be accomplished by a vote of the entire ACCA. The court notes, however, that it appears that such vote is ordinarily perfunctory as a matter of courtesy to the hiring judge.
(19) On March 13, 2000, Plaintiffs submitted four pages of testimony from Judge William M. Bowen, Jr. ("Judge Bowen"), who served as an elected judge on the ACCA from 1976 to 1995. Namely, at his deposition, Judge Bowen stated, in part, as follows:
Q. Were each of the people that worked at the court, employees of the court itself, or did any serve as employees of an individual judge?
. . . . .
A. The law clerks I think were the only employees that served at the pleasure of an individual judge?
Q. What about the secretaries that were assigned to each judge?
A. The secretaries were hired by a vote of the entire court.
*1345 (Judge Bowen's Dep. at 112-113.) In response, the ACCA has submitted an Affidavit from Judge Bowen, dated March 10, 2000. Therein, Judge Bowen states that, at his deposition on May 20, 1999, he was "asked a series of questions concerning the procedures for hiring or terminating" certain individuals employed at the ACCA. (Judge Bowen's Aff. at 1.) In his Affidavit, Judge Bowen explains as follows:
The [ACCA], in 1993, adopted a General Policy Statement which conflicts with the above testimony. This Policy statement provides that "all positions on the Court of Criminal Appeals are confidential in nature and the persons occupying such positions serve at the pleasure of their appointing judge; provided, however, that the employees of the Clerk's office shall serve at the pleasure of the Court." (Attachment 3).
During my deposition, I was not shown this policy statement, nor was it referred to or referenced in any way. It was only after reviewing Attachment A that my memory was refreshed and I remembered that the Court in fact had implemented a personnel policy in 1993. According to that policy statement, each member of a judge's staff serves at the pleasure of [his or her] appointing judge and can be hired or fired by only that judge. I signed this policy in October of 1993 and to my knowledge, it remained in effect until I retired from the Court in January of 1995.
(Judge Bowen's Aff. at 2.)
The court finds that Judge Bowen's deposition testimony, whether viewed alone or together with his Affidavit, does not contradict the other evidence in the record, discussed supra. First, Judge Bowen's Affidavit sets forth his understanding of the hiring procedures of the ACCA after the implementation of the 1993 policy statement and, thus, expands upon his earlier deposition testimony. Second, however, even without the aid of Judge Bowen's Affidavit, the court finds that Judge Bowen's deposition testimony does not conflict with the evidence in the record pertaining to the assignment and duties of a judge's staff after 1993. Namely, in his deposition testimony, Judge Bowen, who served on the ACCA for many years, does not reference any time period to which he is referring. Thus, the court is unable to discern from Judge Bowen's deposition testimony whether he is testifying about the internal organization of the ACCA before or after the implementation of the 1993 policy statement.[10] The court, therefore, finds that Judge Bowen's deposition testimony offers little assistance to the court in deciding the issue before it. Accordingly, the court finds that Judge Bowen's deposition testimony does not support Plaintiffs' argument, as discussed in detail in Section V, that the staff attorneys, among others, were hired and fired by the ACCA as an entity, not by an individual judge.[11]

V. APPLYING THE FACTS TO THE LAW
The issue is whether, during twenty or more weeks in the calendar years 1995 and 1996, the ACCA employed at least fifteen individuals who satisfy Title VII's definition of "employee." If the answer to this issue is "yes," then the ACCA is a Title VII "employer" within the meaning of 42 U.S.C. § 2000e(b), and the court properly exercises subject matter jurisdiction over this case. If the answer to this issue is "no," then the court lacks subject matter jurisdiction, and this case shall be dismissed. *1346 In order to decide this issue, the court must determine whether the ACCA's staff attorneys and junior staff attorneys are excluded from the Title VII definition of "employee." More specifically, the court must determine whether, as argued by the ACCA, the junior staff attorneys and staff attorneys fall into either of the following Title VII "employee" exemptions: (1) persons chosen by an elected official to be on his or her "personal staff"; and (2) immediate advisers concerning constitutional or legal powers of elected officials. See 42 U.S.C. § 2000e(f).
In support of their position that the ACCA is a Title VII "employer," Plaintiffs raise three primary arguments. First, Plaintiffs argue that, in determining the total number of law clerks and staff attorneys[12] employed by the ACCA during the relevant time period, this court can only consider the specific number designated in §§ 12-3-27, 12-3-34 and § 12-3-35 of the Code of Alabama. ALA.CODE §§ 12-3-27, 12-3-34, 12-3-35 (1995). These statutory provisions permit the ACCA to hire a total of five staff attorneys and five law clerks, which is contrary to Kummel's testimony that, at any one time, the ACCA had up to eleven law clerks and eleven staff attorneys. Id. Additionally, as to the creation of a "junior staff attorney" position, Plaintiffs point out that "junior staff attorney" is not a position designated in the statutes. Thus, according to Plaintiffs, the ACCA did not possess the authority to employ additional staff attorneys and law clerks above the statutorily-designated numbers. Further, Plaintiffs argue that the ACCA is prohibited from contravening the plain wording of the statutes by implementing policy statements. For instance, Plaintiffs assert that, in direct contravention of the Code of Alabama, the policy statements allow the ACCA to "establish such new positions as it deems necessary" and designate that all positions at the ACCA, with the exception of the clerk's office, are "confidential in nature" and shall "serve at the pleasure of their appointing judge." (Pl.s' Exs. 2 & 3; ACCA's Exs. 1, 5 & 6.)
Second, Plaintiffs assert that, in determining the duties of the staff attorneys, the court again must look only to the statutes. Plaintiffs focus on the distinctions in the statutes between law clerks and staff attorneys. Plaintiffs, who have conceded that law clerks fall within Title VII's "personal staff" exception under Title VII, turn to the statutory language, which allows "[e]ach judge" of the ACCA "to appoint one law clerk to assist the appointing judge in the performance of his duties." ALA.CODE § 12-3-27 (1995). Further, § 12-3-28 states that "[e]ach law clerk so appointed shall serve as law clerk to the judge appointing him and may be dismissed and a successor appointed at the will of the appointing judge." ALA.CODE § 12-3-28 (1995). To the contrary, Plaintiffs emphasize that §§ 12-3-34 and 12-3-35, permit the ACCA as a whole, not an individual judge, to hire five staff attorneys. Plaintiffs stress that there is nothing in the Code of Alabama indicating that the staff attorneys work for an individual judge or that they may be hired and fired by an individual judge. Therefore, Plaintiffs assert that the ACCA is the supervisory head of the staff attorneys, who work for the ACCA as a whole and not for any one judge. Hence, Plaintiffs argue that the staff attorneys are Title VII "employees," and not the "personal staff" of any one elected official.
Further, Plaintiffs contend that, to the extent that the elected judges have implemented policy statements in an attempt to change the duties and assignments of the staff attorneys, those policy statements are null and void. Similarly, Plaintiffs contend that this court cannot rely on the testimony of Judges Patterson and Cobb regarding the duties and assignment of staff attorneys, because the internal organization created by the ACCA regarding staff attorneys *1347 is contrary to the plain wording of the statutes.
Third, Plaintiffs argue that the ACCA has conceded that it is a Title VII "employer" through its adoption of the Unified Judicial System Personnel Procedures, which contain an EEO plan pertaining to Title VII. According to Plaintiffs, through its adoption of the Unified Judicial System Personnel Procedures, the ACCA has implicitly admitted that it employs the requisite number of Title VII "employees" to fall within Title VII's coverage. Thus, Plaintiffs argue that the ACCA's assertion that less than fifteen of the individuals it employs qualify as Title VII "employees" is an assertion invented solely for the purpose of avoiding liability in this lawsuit.
In response to Plaintiffs' first and second arguments concerning the number and duties of staff attorneys and law clerks, the ACCA points to § 12-4A-1 of the Code of Alabama, which was enacted in 1992. The ACCA argues that this statute empowers it to hire additional personnel, including additional law clerks and staff attorneys. As to Plaintiffs' third argument, the ACCA denies that the adoption of the Unified Judicial System Personnel Procedures constitutes an admission that the ACCA is covered by Title VII's provisions. For the reasons that follow, the court agrees with the ACCA.
In addressing Plaintiffs' first and second arguments, § 12-4A-1 of the Code of Alabama provides, in relevant part, that
... the courts of appeal may employ sufficient personnel to carry out their constitutional duties payable from any funds appropriated or available to such courts.... The Supreme Court and the courts of appeal may each respectively provide, by order or rule, for the appointment, qualifications, and duties of any personnel employed by each court. The Supreme Court and the courts of appeal shall consult with the Administrative Office of Courts in promulgating the procedures for the appointment of employees under this chapter and shall fix all salaries under the State Judicial Personnel System.
ALA CODE § 12-4A-1 (1992). The court finds that, pursuant to § 12-4A-1, the ACCA may create new positions and hire additional employees above and beyond those specifically designated in §§ 12-3-1 through 12-3-36. In other words, § 12-4A-1 is a general statute that expands and enlarges the number of positions allowable on the ACCA and gives the ACCA authority to create positions without having to first seek approval from the legislature. If the legislature intended to limit the ACCA to the number and types of positions designated in Title 12, Section 3 of the Code of Alabama, then the enactment of the above-cited portions of § 12-4A-1 would be meaningless. In other words, the court is quite confident that § 12-4A-1 must be read in para materia with the other code sections in Title 12, Section 3.[13]See State Home Builders Licensure Bd. v. Sowell, 699 So.2d 214, 217-218 (Ala.Civ.App.1997) (discussing the principle of in para materia and "recogniz[ing] that a statute should be construed, if possible, to give effect to every section thereof, and that the legislature should not be deemed to have done a vain and useless thing"). In sum, pursuant to § 12-4A-1, the court finds that the ACCA has statutory authority to create additional law clerk and staff attorney positions and likewise that the ACCA is empowered to change or alter the job responsibilities of the individuals it employed. Thus, the court rejects Plaintiffs' first and second arguments.
Regarding Plaintiffs' third argument, the court finds unpersuasive Plaintiffs' assertion that the ACCA's adoption of the Unified Judicial System Personnel Procedures constitutes an admission that the ACCA is a covered Title VII "employer." No matter what the ACCA's motive or intent may have been in "adopting" the EEO plan, whether or not an entity is a *1348 covered Title VII "employer" involves a jurisdictional, legal analysis. There is no evidence in the record that the ACCA's legal status as an "employer" has been litigated prior to now, nor is there evidence that the ACCA has ever attempted to sort and compute the status of its "employees" under Title VII. Similarly, the court finds unpersuasive Plaintiffs' argument that the ACCA created policy statements or pretended to change the working relationship between the judges and staff attorneys in an attempt to avoid liability in this lawsuit. Namely, the court finds that it is more likely that the ACCA implemented policy statements changing the nature and circumstances of the staff attorneys' relationships vis-a-vis the elected judges in response to § 12-4A-1, which became effective in May 1992. ALACODE § 12-4A-1 (1992). The ACCA's first policy statement was implemented in September 1993, not long after the legislature passed § 12-4A-1, and before Plaintiffs had filed EEOC charges or commenced this litigation.
Next, the court must determine whether the staff attorneys and junior staff attorneys are exempt as Title VII "employees," because they are either members of an elected judge's "personal staff" or are "immediate adviser[s] with respect to the exercise of the constitutional or legal powers" of an elected official. 42 U.S.C. § 2000e(f). Having reviewed each of Teneyuca's six factors, discussed supra in Section III, the court is convinced, and so finds, that the "personal staff" exception removes the staff attorney positions from Title VII's definition of "employee." First, pursuant to the policy statements implemented by the ACCA, the court finds that the individual judges appoint and remove staff attorneys, who serve at the pleasure of their appointing judge.[14] Second, based on Judges Patterson and Cobb's testimony, the court finds that the staff attorneys perform work and are answerable only to the judge for whom they work, not the court as whole. This court finds that the level of personal accountability is consistent with the highly sensitive and confidential nature of the work which staff attorneys perform.
Third, the court finds that staff attorneys on occasion represent their elected judges in the eyes of the public. For example, Judge Cobb's staff attorney visits law schools and conducts interviews for law clerks on behalf of Judge Cobb. Fourth, the testimony from Judges Patterson and Cobb demonstrates that the staff attorneys are under the direction and control of their appointing judge. Fifth, the court finds that the staff attorneys are just below the elected judges in the chain of command. Sixth, and most importantly, the court finds that the staff attorneys and their appointing judges have a close and intimate relationship. In fact, the court cannot envision an employment relationship that is more close and personal than the relationship between the individual ACCA judges and their staff attorneys. As testified by Judges Cobb and Patterson, the ACCA judges place a significant degree of trust in and reliance on the staff attorneys whom they employ. The individual judges and their staff attorneys work together daily, if not hourly. Moreover, on a constant basis, the staff attorneys are privy to their judges' confidential communications and deliberations.[15] Accordingly, the staff attorneys are not "employees" within the meaning of Title VII because they serve on the "personal staff" of their appointing elected officials.
*1349 Alternatively, the court finds that the staff attorneys serve as "immediate adviser[s] with respect to the exercise of the constitutional or legal powers" of the elected judge for whom they work. 42 U.S.C. § 2000e(f); see also Rutland, 54 F.3d at 231. As set forth in § 12-3-9 of the Code of Alabama, the ACCA has "exclusive appellate jurisdiction of all misdemeanors, including the violation of town and city ordinances, habeas corpus and all felonies, including all post conviction writs in criminal cases." ALACODE § 12-3-9 (1995). As explained by Judge Cobb, every defendant in a criminal case has an absolute right to appeal the trial court's judgment of conviction, and she and her colleagues decide the merit of each and every criminal appeal. The court finds that the individual ACCA judges employ staff attorneys to help them perform their constitutional and legal duties as elected officials. The staff attorneys research the legal issues which arise in criminal appeals, provide legal advice to the judges on the merits of these issues, and write draft opinions for the review and signature of the judge for whom they work. The uncontroverted testimony from Judges Patterson and Cobb conclusively demonstrates that the judges "expect" and "receive" advice from the staff attorneys on the issues that go to the core of the judge's duties as an elected official on the Alabama Court of Criminal Appeals. Rutland, 54 F.3d at 231.
In finding that the staff attorneys and junior staff attorneys are not "employees" within the meaning of Title VII, the court must exclude these individuals in determining the total number of Title VII "employees" at the ACCA during 1995 and 1996. As discussed above, the Parties do not dispute that elected judges and law clerks are excluded from Title VII's definition of "employee." Thus, the court likewise must exclude the elected judges and law clerks from the Title VII "employee" count.
In sum, the court finds that the following four types of positions at the ACCA do not meet the Title VII definition of "employee": (1) elected judges, (2) staff attorneys, (3) junior staff attorneys, and (4) law clerks. Thus, to determine the number of countable employees during the 1995 and 1996 calendar years, the court must subtract the number of elected judges, staff attorneys, junior staff attorneys and law clerks from the total number of individuals employed at the ACCA. In using the figures calculated in Section IV, ¶ (11), above, the court states its findings regarding the total number of countable Title VII "employees" in the following chart. Namely, the last column of the following chart represents the court's findings as to the total number of countable Title VII "employees" at the ACCA during each pay period in 1995 and 1996.[16]

 Total # Total #
 Elected Staff Jr. Staff Persons Title VII
Pay Period Judges Attorneys Attorneys Law Clerks Employed "Employees"
01/01/95 - 01/06/95 5 5 5 5 33 13
01/07/95 - 01/20/95 5 5 5 5 33 13
01/21/95 - 02/03/95 5 5 5 5 33 13
02/04/95 - 02/17/95 5 5 6 4 33 13
02/18/95 - 03/03/95 5 5 6 4 33 15
03/04/95 - 03/17/95 5 5 6 4 34 14
03/18/95 - 03/31/95 5 5 5 4 34 15
04/01/95 - 04/14/95 5 5 5 5 34 14
04/15/95 - 04/28/95 5 5 5 5 34 14
04/29/95 - 05/12/95 5 5 5 5 34 14

*1350
05/13/95 - 05/26/95 5 5 5 5 34 14
05/27/95 - 06/09/95 5 5 5 5 33 13
06/10/95 - 06/23/95 5 5 5 5 33 13
06/24/95 - 07/07/95 5 5 5 5 34 14
07/08/95 - 07/21/95 5 5 5 5 33 13
07/22/95 - 08/04/95 5 5 5 5 33 13
08/05/95 - 08/18/95 5 5 5 5 33 13
08/19/95 - 09/01/95 5 5 5 5 33 13
09/02/95 - 09/15/95 5 5 6 4 33 13
09/16/95 - 09/29/95 5 5 6 4 33 13
09/30/95 - 10/13/95 5 5 6 4 33 13
10/14/95 - 10/27/95 5 5 6 4 33 13
10/28/95 - 11/09/95 5 5 5 5 33 13
11/10/95 - 11/22/95 5 5 5 5 34 14
11/23/95 - 12/08/95 5 5 5 5 33 13
12/09/95 - 12/22/95 5 5 5 5 33 13
12/23/95 - 01/05/96 5 5 5 5 33 13
01/06/96 - 01/19/96 5 5 5 5 34 14
01/20/96 - 02/02/96 5 5 5 5 33 13
02/03/96 - 02/16/96 5 5 5 5 33 13
02/17/96 - 03/01/96 5 5 5 5 33 13
03/02/96 - 03/15/96 5 5 5 5 33 13
03/16/96 - 03/29/96 5 5 5 5 33 13
03/30/96 - 04/12/96 5 5 5 5 33 13
04/13/96 - 04/26/96 5 5 5 5 33 13
04/27/95 - 05/10/06 5 5 5 5 33 13
05/11/96 - 05/24/96 5 5 5 5 33 13
05/25/96 - 06/07/96 5 5 5 5 33 13
06/08/96 - 06/21/96 5 5 5 5 34 14
06/22/96 - 07/03/96 5 5 5 5 33 13
07/04/96 - 07/19/96 5 5 5 5 34 14
07/20/96 - 08/02/96 5 5 4 5 34 15
08/03/96 - 08/16/96 5 5 4 6 34 14
08/17/96 - 08/30/96 5 5 4 6 34 14
08/31/96 - 09/13/96 5 5 4 6 34 14
09/14/96 - 09/27/96 5 5 3 9 33 11
09/28/96 - 10/11/96 5 5 4 10 35 11
10/12/96 - 10/25/96 5 4 4 11 37 13
10/26/96 - 11/08/96 5 4 4 11 39 16
11/09/96 - 11/22/96 5 5 4 11 37 12
11/23/96 - 12/06/96 5 5 4 11 38 13
12/07/96 - 12/20/96 5 5 4 11 38 13
12/21/96 - 12/31/96 5 5 4 11 38 13

As the court's chart reveals, there are only three pay periods, or six weeks, during 1995 and 1996 when the ACCA employed fifteen "employees" within the meaning of Title VII. Thus, the court finds that the ACCA is not an "employer" within the meaning of Title VII. Accordingly, the court finds that it lacks subject matter jurisdiction to entertain Plaintiffs' Title VII lawsuit.

VI. ORDER
Based on the foregoing and under the standards set forth in Section II, above, it is CONSIDERED and ORDERED that the court lacks subject matter jurisdiction over this action and that Plaintiffs' lawsuit be and the same is hereby DISMISSED for want of subject matter jurisdiction. A Judgment in accordance with this Memorandum *1351 Opinion shall be entered separately.
It is further CONSIDERED and ORDERED that the ACCA's Motion For Judgment As A Matter Of Law made at conclusion of Plaintiffs' evidence at the March 10, 2000 evidentiary hearing and renewed at the close of all the evidence be and the same is hereby DENIED AS MOOT.
It is further CONSIDERED and ORDERED that the United States Marshal SERVE courtesy copies of this Memorandum Opinion and attached Judgment on Presiding Judge Francis Allen Long, Sr., Judges H. Ward McMillan, Sue Bell Cobb, Pamela Baschab and James H. Fry, and Active-Retired Judge John Patterson of the Alabama Court of Criminal Appeals.
NOTES
[1] "Person" is defined as "one or more individuals, governments, governmental agencies, political subdivisions, labor unions, partnerships, associations, corporations, legal representatives, mutual companies, joint-stock companies, trusts, unincorporated organizations, trustees, trustees in cases under Title 11, or receivers." 42 U.S.C. § 2000e(a).
[2] Plaintiffs and the ACCA stipulated to the authenticity of all exhibits introduced at the evidentiary hearing. See FED.R.EVID. 901.
[3] Since January 1997, Judge Patterson has served as a supernumerary judge on the ACCA. (Feb. 14, 2000 Order at 68 n. 20.)
[4] As agreed by the Parties, these calculations "include the clerk and assistant clerk, as was as all other staff in the ACCA clerk's office." (Id.)
[5] The ACCA employed both staff attorneys and junior staff attorneys. The above stipulation pertains only to the staff attorneys, not the junior staff attorneys.
[6] These facts also were undisputed at the summary judgment stage. (Feb. 14, 2000 Order at 70-71.)
[7] At the March 10, 2000 evidentiary hearing, the testimony revealed that the elected judge's secretaries are also referred to interchangeably as "confidential assistants," "judicial secretaries," "executive assistants" and "confidential secretaries." For example, on the ACCA's summary chart, ACCA's counsel designated the judges' secretaries as "confidential assistants." (ACCA Ex. 28.) Herein, the court will refer to the judges' secretaries as "confidential assistants."
[8] To explain further, suppose the court were to decide today that the judges' "confidential assistants" could not be classified as Title VII "employees," because said positions fell within the exception to Title VII's "employee" definition. See 42 U.S.C. § 2000e(f). Then, should this case proceed to trial on the merits of Plaintiffs' claims, the ACCA would undoubtedly argue that, during the timeframe Laurie performed the duties as Judge Taylor's confidential assistant, she was exempt from Title VII coverage, because she was not an "employee" within the meaning of Title VII. Thus, the ACCA would argue that Laurie should be prohibited from presenting evidence of alleged sexual harassment and from recovering damages for alleged sexual harassment occurring during this three-month period. In support of its argument, the ACCA would point to this court's finding that, for purposes of counting employees, the judges' confidential assistants were not Title VII "employees." In other words, if the court makes a determination as to the "employee" status of the judges' confidential assistants, then, as prohibited in Garcia, the court may have indirectly decided Laurie's status as a Title VII "employee" during the aforementioned three-month period in 1983. See 104 F.3d at 1257, 1267.
[9] The court notes that the "Total" column is not intended to equal the sum of the elected judges, staff attorneys, junior staff attorneys, law clerks and clerk's office employees. In other words, the court has not included in this chart all positions at the ACCA, such as the judges' confidential assistants.

For clarity, the court reiterates that the number of elected judges, staff attorneys and clerk's office employees for each pay period is undisputed. Also, the court has credited Kummel's testimony that ACCA's Exhibit 28 accurately reflects the number of law clerks and junior staff attorneys employed during each ACCA pay period. Finally, the court's calculations on the "Total" number of employees is based on Plaintiffs' Exhibits 10 and 11 and ACCA's Exhibit 26.
[10] As discussed in Section V, infra, the court finds that § 12-4A-1 of the Code of Alabama authorized the ACCA to implement policy statements, creating new positions and changing the assignments of individuals employed at the ACCA.
[11] The court notes that Judge Bowen's deposition testimony and Affidavit are admissible under Rule 56(e) of the Federal Rules of Civil Procedure, and the court accepts this evidence for the purpose of ruling on the undisputed facts under the summary judgment standard. The court emphasizes that the court has found no inconsistencies between Judge Bowen's deposition testimony and the other evidence in the record.
[12] Henceforth, the court will refer to the staff attorneys and junior staff attorneys collectively as "staff attorneys."
[13] In para materia means "[u]pon the same matter or subject." Blacks' Law Dictionary (4th ed.1957). "Statutes in pari materia' are to be construed together." Id.
[14] The court notes that, even if the first factor was not met and each judge did not have the exclusive authority to hire and fire his or her staff attorneys, the court's conclusion that the staff attorneys fall within Title VII's "personal staff" exception would not be altered. That is, the court finds that, regardless of who did the hiring and firing, the nature and circumstances of the relationship between the judges and the staff attorneys overwhelmingly weighs in favor of excluding staff attorneys from the Title VII definition of "employee."
[15] The court notes that, in all material respects, the duties and accountability of the staff attorneys are indistinguishable from those of the law clerks.
[16] In other words, to arrive at the "Total # of Title VII `Employees'" in the last column, the court added together columns two through five and then subtracted this total from the "Total # Persons Employed."